# UNITED STATES DISTRICT COURT
# IN THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Sherwin T. Shelton,

        Plaintiffs,

Vs.

John Christiansen, M. Sosinksi,
Kaelie Lewis, Magen Oaks, Donna Rohrs,
Carlynn VanHall, Michael Desco, and Jordan Block,
in their individual capacities.

_____/

Paul Matouka P84874
Alyson Oliver P55020
Christopher Brown P83439
OLIVER LAW GROUP PC
Attorneys for Plaintiffs
1647 W. Big Beaver Road
Troy, MI 48084
(248) 327-6556
notifications@oliverlawgroup.com
_____/

## COMPLAINT AND JURY DEMAND

NOW COMES PLAINTIFF, Sherwin T. Shelton, and in support of his

Complaint, states as follows:

1

**Parties and Jurisdiction**

1. Plaintiff is a prisoner of the Michigan Department of Corrections ("MDOC") and has been housed at the Central Michigan Correctional Facility ("STF") from January 1, 2020 through the current date.

2. Defendant John Christiansen has, at all relevant times, been the Warden of STF.

3. Defendant M. Sosinski has, at all relevant times, been a registered nurse at STF and actively involved in Plaintiff's treatment.

4. Defendant Kaelie Lewis has, at all relevant times, been a registered nurse at STF and actively involved in Plaintiff's treatment.

5. Defendant Carlynn VanHall has, at all relevant times, been a registered nurse at STF and actively involved in Plaintiff's treatment.

6. Defendant Donna Rohrs has, at all relevant times, been a physician's assistant at STF and actively involved in Plaintiff's treatment.

7. Defendant Jordan Block has, at all relevant times, been the physician's assistant at STF and actively involved in the treatment of Plaintiff.

8. Defendant Michael Desco has, at all relevant times, been a facilities inspector at STF and then the Acting Deputy Warden.

9. Defendant Magen Oaks is a registered nurse and has, at all relevant times, been the Health Unit Manager at STF. As such, Defendant Oaks was

responsible for overseeing all aspects of STF's healthcare, including Plaintiff's treatment.

10. Non-party, Duane Waters Health Center is a medical care facility in Jackson, Michigan operated by the Michigan Department of Corrections to provide care for inmates whose needs cannot be met at correctional facilities.

11. This suit is against all Defendants in their individual capacities for the requested monetary damages.

12. This action arises under the United States Constitution and 42 U.S.C. §1983.

13. This suit is brought pursuant to federal question jurisdiction, 28 U.S.C. §1331.

14. Venue is proper within this District pursuant to 28 U.S.C. 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims in this Complaint occurred within this District.

## Facts

15. Plaintiff repeats and re-alleges the allegations of the above paragraphs.

16. The Michigan Civil Service Commission provides job specifications containing the job duties for registered nurses, physician's assistants, corrections security inspectors, assistant deputy wardens, and senior executive wardens, including Defendants herein.

17. The job duties of registered nurses such as Defendants Lewis, Rohrs, and VanHall include:

> [P]rovid[ing] general nursing care services . . . Us[ing] professional nursing processes, including assessment, analysis, planning, implementation, and evaluation, while carrying out nursing responsibilities. Assess[ing] health care needs of patients through a variety of routine interdisciplined assessments, and develops, implements, and evaluates individualized nursing and health care plans accordingly . . . Administer[ing] medications and treatments as prescribed by medical practitioners.

> **Exhibit 1, Registered Nurse Job Specification**.

18. The job duties of physician assistants such as Defendants Block and Sosinski include:

> Accept[ing] referral of patients from nursing staff, other health care professionals, custodial, and administrative staff. Initiat[ing] an appropriate assessment of patient's health status, ranging from focused to comprehensive . . . Consult[ing] with colleagues, supervising Physicians, specialists, and other health professionals as appropriate . . . Formulat[ing] treatment plan, **ensuring timely provision of necessary health care services. Orders necessary medications and other therapeutic equipment and supplies within the scope of practice** . . . Advocat[ing] for the rights of patients.

4

    **Exhibit 2, Physician Assistant Job Specification** (emphasis added).

19. Furthermore, physician assistants designated as a "Lead Worker" are required to "Oversee[] the work of professional staff by making and reviewing work assignments, establishing priorities, coordinating activities, and resolving related work problems." **Exhibit 2, Physician Assistant Job Specification**.

20. The job duties of corrections security inspectors such as Defendant Desco include:

> Conduct[ing] unscheduled inspections to ensure that all personnel remain alert, diligent, and on their assigned posts or other assignments. Evaluat[ing] and verif[ying] employee performance through the review of completed work. Conduct[ing] employee or prisoner investigations and resulting disciplinary conferences, including selecting, administering, and documenting progressive and disciplinary measures . . . Perform[ing] regularly scheduled inspections of all parts of the facility to review compliance with critical policies and procedures . . . Monitor[ing] and evaluat[ing] program and organizational performance to assess efficiency and effectiveness.

**Exhibit 3, Corrections Security Inspector Job Specification.**

21. The job duties of assistant deputy wardens such as Defendant Desco include:

> Coordinat[ing] activities by scheduling work assignments, setting priorities, and directing the work of subordinate employees. Evaluat[ing] and verif[ying] employee performance through the review of completed work assignments and work techniques. Identify[ing] staff development and training needs

and ensur[ing] that training is obtained . . . Review[ing] written communications from prisoners and interview[ing] them regarding special or personal problems.

**Exhibit 4, Assistant Deputy Warden Job Specification**.

22. The job duties of a senior executive warden such as Defendant Christansen include:

> Ensur[ing] adherence to departmental policies and procedures . . . Advis[ing] staff in the resolution of sensitive, complex, or precedent-setting situations; determines appropriate course of action; assigns responsibilities and monitors actions and responses . . . Conduct[ing] staff meetings and conferences with assistants to discuss operating problems . . . personnel matters, technical problems, and the status of programs and projects . . .

**Exhibit 5, Senior Executive Warden Job Specification**.

23. Plaintiff was born with spina bifida and requires Ankle Foot Orthoses ("AFO") leg braces to prevent pain and swelling in his legs and to assist in his mobility.

24. Plaintiff is designated as a "handicap inmate" and has been the subject of numerous "Special Accommodations Orders" from the MDOC going back at least to December of 2011. **Exhibit 6 – Special Accommodations Orders**.

25. Plaintiff has been using AFO braces for more than a decade and first received them while incarcerated by the MDOC. The AFO brace on Plaintiff's right leg is plastic and the brace on his left leg is metal.

26. STF lacks the equipment and expertise to provide Plaintiff with his AFO braces so he is treated offsite at the Duane Waters medical facility.

27. Plaintiff has been treated at Duane Waters for over a decade.

28. Plaintiff was originally provided a plastic brace for his left leg, however, the severity of his medical condition caused the plastic brace to break on numerous occasions and Plaintiff's left brace was ultimately replaced with a steel brace in 2005 or 2006.

29. Both of Plaintiff's braces must be attached to his boots or shoes and each time Plaintiff receives new boots or shoes for one brace he also receives boots or shoes for the other brace to ensure that he is walking evenly.

30. Replacements historically have taken approximately three weeks.

31. As soon as Plaintiff is without his AFO Brace and boots he begins experiencing increased pain and swelling in his right foot and ankle. Furthermore, the lack of his AFO Brace causes Plaintiff increased lower back pain.

32. Even with the steel brace, the brace and attached shoe need frequent repair. **Exhibit 7,** 10/26/2020 **Clinical Encounter Note** ("[Sherwin Shelton's] shoes somewhat frequently break down and PT repairs or replaces almost Q6months [sic.].").

33. Plaintiff has nine screws in his left foot from reconstruction surgery in March of 2018, one of which is broken and causes additional pain when Plaintiff is without his AFO Brace.

34. On January 14, 2020, Plaintiff was taken offsite to Duane L. Waters Health Care Orthotics for "repair of his [left leg] AFO brace and transfer of the brace to new boots." **Exhibit 8, Grievance Step II Response**. Plaintiff's orthotist requested that he return the next week to be fitted for his AFO brace and new boots. *Id*.

35. The request for Plaintiff to return to his orthotist was reviewed by STF medical staff on January 22, 2020 and approved on January 27, 2020. **Exhibit 8 – Grievance Step II Response**.

36. On February 4, 2020, Plaintiff completed a Health Care Request form (CHJ-549) labelling it as "urgent" and inquiring why he had not returned to his orthotist to pick up his AFO brace. **Exhibit 9 – Health Care Request 2/4/2020**.

37. STF Healthcare was notified that Plaintiff was approved for an offsite visit to his orthotist on February 6, 2020. **Exhibit 10 – Step I Grievance Response**.

38. Plaintiff filed several Health Care Requests to return to his orthotist and retrieve his AFO brace prior to the COVID-19 outbreak, but only received a single response to one sent on February 4, 2020.

39. Plaintiff's Health Care Request was received on February 5 with the response given, "You are scheduled with HC. Look for your call out." **Exhibit 11 – Kite Response 2/5/2020.**

40. Plaintiff was never taken offsite for the needed fitting for AFO brace and new boots despite the approval and scheduled appointment.

41. Plaintiff was eventually provided with an Ace wrap for his left foot and ankle on May 26, 2020. **Exhibit 12, 05/26/2020 Medical Detail Accommodations**.

42. The Ace wrap was both untimely and utterly insufficient, with Plaintiff receiving it after more than four months without his AFO brace.

43. Contrary to the recorded notes, *see* **Exhibit 13, 5/26/2021 Administrative Notes**, Plaintiff never stated that the Ace wrap assisted with his pain and it provided no relief for the swelling or pain in his foot and ankle.

44. Plaintiff was then provided with "'Surefit' boots to wear in the interim." **Exhibit 8 – Grievance Step II Response**.

45. The "Surefit" boots provided to Plaintiff were wholly inadequate to his medical needs and led to significant pain and suffering by the Plaintiff.

46. Plaintiff was not permitted to return to his orthotist in January, February, or March of 2020, prior to any cases of COVID-19 being reported in Michigan. Nor was he able to return to DWH to receive his AFO Brace after the COVID-19 outbreak in Michigan officially began on March 10, 2020 through the present date.

47. On March 10, 2020, the Michigan Department of Health and Human Services "identified the first two presumptive-positive cases of COVID-19 in Michigan." **Exhibit 14 – Executive Order 2020-17**.

48. On March 20, 2020 Michigan Governor Gretchen Whitmer issued Executive Order No. 2020-17 ordering "covered medical facilities" to postpone "all non-essential procedures." **Exhibit 14 – Executive Order 2020-17**.

49. On March 29, 2020 Governor Gretchen Whitmer issued Executive Order No. 2020-29 directing the MDOC to, inter alia, "limit[] off-site appointments for incarcerated persons to only appointments for urgent or emergency medical treatment." **Exhibit 15 – Executive Order 2020-29**.

50. Plaintiff filed a Step I Grievance in April of 2020 which was denied on April 15, 2020 allegedly because his "appointment was awaiting scheduling from Duane Waters Orthotics department when notice came

that routine offsite appointments were delayed to due [sic.] the COVID-19 crisis." **Exhibit 10– Grievance Step I Response**.

51. On October 30, 2020 Plaintiff was finally given a "large 4 wheeled rollator walker with handbrakes." **Exhibit 16, 10/30/2020 Clinical Encounter Note**.

52. While Plaintiff has not been able to return to Duane Waters to retrieve his AFO brace since January of 2020, he has had many other offsite doctors' appointments.

53. On July 1, 2020 Plaintiff went to Alma Hospital for an MRI.

54. On July 17, 2020 Plaintiff went to the Michigan University to see a urologist.

55. On July 21, 2020 Plaintiff went to Alma Hospital for another MRI.

56. On February 17, 2021, Plaintiff went to Henry Ford Allegiance Orthopedic Surgery in Jackson, where his doctor ordered him a walking boot.

57. On February 19, 2021 Jordan Block approved Plaintiff for use of a walking boot.

58. On February 22, 2021, Plaintiff went to his neurosurgeon, Dr. Tien, at Henry Ford Hospital in Jackson regarding issues with his L-4 and L-5 vertebrae. During his appointment Plaintiff's neurosurgeon expressed

concern that Plaintiff's lack of an AFO brace was exacerbating his back injuries.

59. On April 28, 2021, Plaintiff again saw Dr. Tien, who again expressed concern about his lack of an AFO brace and noted that "will plan to have the office coordinate to ensure that the patient is able to receive his AFO brace." **Exhibit 17, April 28, 2021, Dr. Tien Records.**

60. On March 11, 2021 Plaintiff returned to Henry Ford Hospital for a CT scan on his left ankle and foot. Plaintiff was finally provided with a walking boot but still requires surgery for the broken screws and his AFO Brace adequately treat his club-foot and spina bifida.

61. Since January 14, 2020 and continuing to this day, Plaintiff suffers pain and swelling as a result of Defendants failure to provide the treatment that was agreed upon by both Plaintiff's orthotist *and* the STF Medical Care staff. *See* **Exhibit 8 – Grievance Step II Response** ("It is acknowledged that earlier return to DWH Orthotics would have been preferred following the 1/14/2020 appointment."); **Exhibit 18, 10/06/2020 Clinical Encounter Note** ("Pt reports worsening of his left ankle pain/instability of left ankle."); **Exhibit 19, 6/9/2020 Clinical Encounter Note** ("Orthotics follow up remains medically necessary.").

62. Furthermore, Plaintiff has on numerous occasions been given a new or repaired AFO Brace without having to go offsite. *See, e.g.*, **Exhibit 20, 4/8/2014 Administrative Note** ("Received inmates AFO attached to boot from dwhc orthotics dept and delivered it to inmates housing unit. Inmate accepted AFO and will use it for a period of time to make sure fit is good.").

63. None of the Defendants attempted to have Plaintiff's brace shipped to STF until April or May of 2021 despite Plaintiff's requests.

64. Throughout the time Plaintiff has been without his AFO brace, he has repeatedly informed the staff at STF about the suffering he is enduring, including Defendants Oaks, Christiansen, Lewis, Rohrs, Desco and Sosinski.

65. While Plaintiff informed Defendant Oaks about his problems stemming from his lack of an AFO brace, Defendant Oaks assiduously avoided discussing the matter with Plaintiff.

66. Plaintiff has directly spoken with the Defendant John Christiansen about his brace on more than one occasion. *See* **Exhibit 21, 1/14/2021 JPay letter from Warden Christiansen** ("I followed up with health care per our conversation related to you brace . . .").

67. Defendant Jordan Block was aware of Plaintiff's pain and that Plaintiff needed his AFO Brace. However, he refused to take the steps necessary to get Plaintiff's Brace. **Exhibit 22, 5/27/2020 Clinical Encounter Note** ("Patient currently using Ace wrap to assist with [lower back pain] until receives back brace. No further action needed at this time.").

68. Defendant Kaelie Lewis was also clearly aware of Plaintiff's ongoing pain due to lack of his AFO Brace, "Prisoner rates pain on left foot 8 out of 10 on pains scale." **Exhibit 23, 5/19/2020 Clinical Encounter Note**.

69. Defendant Donna Rohrs was also aware of Plaintiff's ongoing pain due to lack of his AFO Brace, "Pt says today that he feels the Neurontin needs to be increased because his pain is not controlled." **Exhibit 24, 3/3/2020 Clinical Encounter Note.**

70. Defendant Michael Desco was aware of Plaintiff's because, while serving as an STF facilities inspector in 2020, he had a meeting with Plaintiff and Defendant Oaks regarding Plaintiff's brace and foot pain.

71. Plaintiff has filed multiple medical requests to receive his brace. *See* **Exhibit 9, 2/4/2020 Health Care Request**; **Exhibit 25, 7/21/2020 Kite Response**.

72. Plaintiff is seen nightly by the nurses at STF, whom he has told of his ongoing pain and lack of AFO brace.

73. Defendants knew of Plaintiff's medical condition and needs prior to the events giving rise to this complaint. *See* **Exhibit 25, 7/21/2020 Kite Response** ("Mr. Shelton, it is clearly documented that you have issues, nobody is doubting the difficulties that you may be having.").

74. Despite Defendants assertions to the contrary, *see* **Exhibit 25, 7/21/2020 Kite Response** ("The Orthotics clinic is unable to send us your equipment because it is something that they need to fit in person"), they could, and ultimately did, have Plaintiff's AFO Brace shipped to STF without the need for Plaintiff to go off-site to Duane Waters for a fitting. However, they failed to provide Plaintiff with a new boot for his left brace.

75. On April 28, 2021, Plaintiff saw his foot surgeon at Henry Ford Hospital who put a note in his filing informing the MDOC that Plaintiff needed his brace. **Exhibit 17, April 28, 2021, Dr. Tien Records.**

76. On May 9, 2021, Plaintiff was called down to medical where he was offered his right AFO brace and boot but not a new boot for his left brace which had finally been shipped from Duane Waters.

77. Plaintiff refused his right AFO brace and boot because that would have left him walking unevenly due to wear on his right boot.

78. Finally, on June 7, 2021, **after spending nearly a year and a half without**, Plaintiff was finally provided with his AFO brace and boots onsite at STF.

79. Plaintiff immediately noticed relief in the pain and swelling that he had suffered and enjoyed significantly increased mobility.

80. While Plaintiff was eventually provided with a walking boot that helps with the pain and swelling, it severely inhibits his mobility and is impractical for use on short notice causing Plaintiff to miss call-outs or not wear the boot because it takes too long to put on. Furthermore, Plaintiff was not provided with this walking boot until more than a year after he initially lost his AFO Brace.

81. Throughout this ordeal, Defendants have offered shifting and inconsistent reasons why Plaintiff has not yet received his AFO brace and no explanation why he was not returned to DWH prior to the outbreak of the pandemic or why the AFO brace and boots cannot simply be shipped.

## **Exhaustion of Administrative Remedies**

82. Plaintiff repeats and re-alleges the allegations of the above paragraphs.

83. Plaintiff has exhausted all available administrative remedies and his grievances were denied or rejected.

84. On February 4, 2020, Plaintiff submitted a Health Care Request (form CHJ-549) regarding the delay in receiving his AFO Brace noting that not having his brace "may cause damage and more pain . . ." **Exhibit 9, 2/4/2020 Health Care Request**.

85. On February 5, 2020, one of STF's nurses responded stating that he was scheduled with "HC". **Exhibit 11, 2/5/2020 Kite Response**.

86. On or around April 11, 2020, Plaintiff filed a Step I Grievance regarding Defendants' failure to return him to Duane Waters Orthotics to receive his AFO Brace. **Exhibit 26, AFO Brace Grievances**.

87. On April 15, 2020, Plaintiff's Step I Grievance was denied. **Exhibit 26, AFO Brace Grievances**.

88. On April 27, 2020, Plaintiff filed a Step II Grievance. **Exhibit 26, AFO Brace Grievances**.

89. On June 18, 2020, Plaintiff's Step II Grievance was "partially resolved" apparently because Patricia Lamb had contacted STF healthcare and received assurances that Plaintiff would be taken to DWH Orthotics whenever "routine off-site visits resume . . ." **Exhibit 26, AFO Brace Grievances**.

90. In late June of 2020, Plaintiff filed his Step III Grievance. **26, AFO Brace Grievances**.

91. On July 21, 2020 Plaintiff's Step III Grievance was "rejected as failed to attempt to resolve issue with staff. Per the Electronic Medical Record, a written attempt to resolve this issue through a Health Care Request (CHJ-549)/Prisoner Kite for medical services was not found in the EMR." **Exhibit 26, AFO Brace Grievances**.

92. Obviously, given the Health Care Request Form and Response of February 4 and 5 of 2020, the rejection of Plaintiff's Step III Grievance was in error. **Exhibit 9, 2/4/2020 Health Care Request**; **Exhibit 11, 2/5/2020 Kite Response**.

93. Irrespective of the MDOC's failures to properly respond to Plaintiff's Grievances, Plaintiff has clearly exhausted all his administrative remedies.

94. Furthermore, the MDOC's improper rejection of Plaintiff's grievance demonstrates that no remedy was available.

### <u>COUNT ONE</u>
### 42 U.S.C. § 1983: Eighth and Fourteenth Amendments
### of the United States Constitution
### Failure to Provide Adequate Medical Care

95. Plaintiff repeats and re-alleges the allegations of the above paragraphs.

96. Defendants Block, Lewis, Rohrs, and Oaks were all aware of Plaintiffs' need to return to Duane Waters in a timely fashion after he dropped off his brace.

97. Furthermore, as time dragged on, each Defendant was or became aware of Plaintiff's serious medical needs as each of the named Defendants had conversations with Plaintiff about his lack of an AFO brace and resulting pain, swelling, and lack of mobility:

    a. Defendants Block, Lewis, and Rohrs all examined Plaintiff during the period he did not have his AFO brace in 2020 and 2021;

    b. Defendants Desco and Oaks had, among other interactions with Plaintiff on this matter, a meeting in 2020 regarding Plaintiffs' lack of an AFO brace;

    c. Defendant Christansen communicated with Plaintiff in person and through J-Pay regarding his AFO brace and ongoing medical problems in 2020 and 2021.

98. Each Defendant had the ability to ensure that Plaintiff received medical treatment.

    a. Prior to the COVID-19 pandemic, Defendants Block and Oaks had the authority and time to secure Plaintiff an appointment to return Duane Waters and get his boot.

    b. Once the pandemic began, each Defendant had the ability to call and have the brace and boots delivered *or* have any of the MDOC staff

transporting other inmates to Duane Waters to retrieve the AFO brace and boots.

99. None of the Defendants took any of these simple steps to get Plaintiff his AFO brace and boots in a timely fashion – **causing unnecessary pain and suffering for more than one year**.

100. There is not, and cannot be, any reasonable disagreement as to when Plaintiff should have returned to his orthotist to be fitted for his repaired AFO brace and boots or had his repaired brace and boots shipped to STF.

101. Plaintiff was left without his brace for nearly two-months before the COVID-19 pandemic arrived in Michigan and over a year and four months before Defendants offered Plaintiff even a partial remedy for his pain and suffering.

102. Defendants have no justifiable medical or penological reason for denying Plaintiff's access to medical care.

103. By their policies and practices, actions and non-actions described herein, Defendants' denial of adequate medical care and deliberate indifference to Plaintiff's serious medical needs caused cause him substantial pain and suffering and greatly limited his ability to ambulate thereby violating his right to be free of cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution.

### **Request for Relief**

WHEREFORE, Plaintiff respectfully request that the Court:

    a.  Adjudge and declare that the acts, omissions, policies, and practices of Defendants personally, and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise as described herein are in violation of Plaintiff's rights of the under the Cruel and Unusual Punishments Clause of the Eighth Amendment and Fourteenth Amendment to the United States Constitution and federal law;

    b.  Issue a judgment against Defendants in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and reasonable and will hold Defendants liable for the civil rights violations alleged.

    c.  Award Plaintiffs the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable law; and

    d.  Grant Plaintiff such other relief as the Court deems appropriate and just.

## JURY DEMAND

Plaintiffs hereby demand a jury trial.


Respectfully Submitted,

Oliver Law Group P.C.


Date:  July 13, 2021                    /s/ Alyson Oliver
                                        Alyson Oliver (P55020)
                                        Attorney for Plaintiff
                                        1647 W. Big Beaver Rd.
                                        Troy, MI 48084
                                        T: (248) 327-6556
                                        E: notifications@oliverlawgroup.com

# Exhibit 1

**MICHIGAN CIVIL SERVICE COMMISSION**
**JOB SPECIFICATION**

## REGISTERED NURSE

### JOB DESCRIPTION

Employees in this job provide professional nursing care services to patients in state facilities or clients of state health care programs.

There are four classifications in this job.

### Position Code Title - Registered Nurse-E

Registered Nurse P11

This is the experienced level.  The employee performs a full range of nursing assignments in a full functioning capacity.  Considerable independent judgement is required to carry out assignments that have significant impact on services or programs.  Guidelines may be available, but require adaptation or interpretation to determine appropriate courses of action.

### Position Code Title - Registered Nurse-1

Registered Nurse 12

This is the first advanced level.  The employee may function as a senior worker, or as an emergency/clinic nursing services specialist.  At this level, employees are responsible for regular assignments which have been recognized by Civil Service as having significantly greater complexity than those assigned at the experienced level.

### Position Code Title - Registered Nurse-2

Registered Nurse 13

This is the second advanced level.  At this level, the employee is responsible for the performance of work identified by Civil Service as being specialized in nature.  The employee serves in one of the following capacities: an advisor to a non-medical administrator; the sole infection control nurse at a facility; a nursing/health education developer; a community placement nurse; or the sole quality assurance nurse at a facility.

### Position Code Title - Registered Nurse-3

Registered Nurse 14

This is the third advanced level.  At this level, an employee serves as a nurse anesthetist with responsibility for providing comprehensive clinical anesthesia care or as a nurse practitioner with responsibility for providing comprehensive primary care.

### JOB DUTIES

**NOTE:** The job duties listed are typical examples of the work performed by positions in this job classification.  Not all duties assigned to every position are included, nor is it expected that all positions will be assigned every duty.

Provides general nursing care services within the legal scope of nursing practice and standards developed by the profession, Nurse Practice Act, and regulatory agencies.

Uses professional nursing processes, including assessment, analysis, planning, implementation, and evaluation, while carrying out nursing responsibilities.

Assesses health care needs of patients through a variety of routine interdisciplined assessments, and develops, implements, and evaluates individualized nursing and health care plans accordingly.

Responds to emergency health care needs of patients.

Performs health screenings of patients or clients.

Collects and records data specific to the health status of patients or clients.

Promotes and maintains a safe and therapeutic environment for patients or clients.

Administers medications and treatments as prescribed by medical practitioners.

Instructs patients in treatment methods prescribed by medical practitioners or interdisciplinary treatment teams.

Inventories and orders medications and other medical supplies.

Monitors and clinically directs nursing support personnel in the performance of delegated nursing activities.

Participates in interdisciplinary planning meetings and recommends changes in nursing and health care programs, and/or in the care of patients.

Maintains knowledge of current nursing and health care technology and practices.

Encourages patient and client participation in therapeutic activities.

Provides health care instruction and education to individuals and others relating to the promotion of health and prevention or management of illness, disease, injury, or disability.

Provides assistance to medical practitioners in performing general physical examinations and making ward rounds.

Draws blood, obtains and prepares laboratory specimens.

Provides on-going health care instruction for staff.

Participates in agency/facility security procedures.

Performs related work as assigned.

### Additional Job Duties

Registered Nurse 12

(Emergency/Clinic Nurse):

Provides emergency/clinic nursing services for residents and employees and provides referrals for medical services as necessary.

Assists with the operation of daily or specialty clinics through coordination of consultant medical practitioners' schedules, resident scheduling, and follow-up communication with other staff.

Accompanies residents/patients/employees and facilitates health services rendered by community health agencies.

Registered Nurse 12 (Senior Worker)

Performs on a regular basis professional nursing assignments which have been recognized by Civil Service as more complex than those assigned at the experienced level.

Registered Nurse 13

(Advisor to a Non-Medical Administrator):

Serves as the program nurse in a non-medical oriented setting reporting to a non-medical administrator.

Clinically directs resident care staff in the performance of selected health care functions.

Serves as a resource person to nursing, and other health care personnel regarding client health issues.

Serves as a para-medical information resource nurse in a disability determination area.

Provides nursing technical assistance to clients, parents, guardians, and significant others.

(Infection Control Nurse):

As the sole infection control nurse at a facility:

Initiates investigations of infections upon request and/or with assistance of nursing or medical personnel.

Collects data from patients' records and reports incidents of infections, which will be used by the medical staff for epidemiological analysis.

Develops and directs on-going infection control surveillance activities.

Develops a centralized reporting system for data to be systematically collected and reported to the Infection Control Nurse, and maintains records of the infection control program.

Develops, implements, and assesses infection control policies and procedures.

Develops and presents infection control educational programs for nursing and non-nursing personnel.

Reviews, evaluates and approves techniques employed in the clinics and in treatment of patients with infections and communicable diseases.

Practices the nursing process of case finding, assessment and interpretation of practices as they relate to infectious disease and infection control, with particular attention to reduction and prevention of nosocomial infections.

(Nursing/Health Education Developer):

Plans, develops and implements an on-going, in-service, education program for nursing.

Conducts training sessions, workshops, conferences, and seminars to broaden and enhance the participants' knowledge and skill in providing nursing care.

Tests trainees to measure learning progress and to evaluate the effectiveness of training presentations.

Plans, evaluates and implements orientation manuals and training materials to be utilized by new nursing employees, including scheduled times for teaching classes.

Reviews and provides current literature on concepts of nursing care.

Reviews and evaluates new instructional material and equipment.

Determines whether training programs meet acceptable standards as prescribed by law, federal guidelines, and practice standards.

Serves as an advisor to inter- and intra-departmental disciplines.

(Community Placement Nurse):

Participates in the evaluation of community based clients being referred for agency services.

Provides professional health care screening of identified clients.

Assists with development of community residential settings and provides for appropriate placement of clients in those settings.

Provides professional nursing component in the placement process to assure appropriate community/residential placement.

Serves as health care resource person to the social work staff for home development, placement, and client management services.

Facilitates exchange of information and planning between providers to enhance appropriateness and continuity of care for clients placed in or transferred between community residences.

Serves as placement liaison for other health care professionals.

Participates in monitoring and evaluating of clients on convalescent status.

May identify need for and participate in establishing policies and procedures.

(Quality Assurance Nurse):

As the sole quality assurance nurse at a facility:

Plans, implements, evaluates, and monitors quality assurance programs for a facility/agency.

Uses established methods, procedures and format in developing quality assurance program to meet needs of the facility/agency.

Serves as a resource person for nursing and other disciplines specific to quality assurance program.

Participates in planning, preparation and evaluation of quality assurance seminars, workshops and in-service programs.

Collaborates in formulating, implementing and evaluating quality assurance policies and procedures.

Registered Nurse 14

(Nurse Anesthetist):

Provides comprehensive clinical anesthesia care consistent with the policies, rules, and regulations of the practice setting during the perioperative period including: preanesthesia evaluation, selection and/or administration of preoperative medication, selection and administration of all types of anesthesia, management of intraoperative care, and evaluation and management of postanesthesia care.

Functions as a member of the cardiopulmonary resuscitation team.

Collects data specific to the health status of the patient/resident/prisoner systematically and continuously.

(Nurse Practitioner):

Prescribes medications and treatments as delegated by medical practitioners.

Provides comprehensive primary care consistent with policies and rules and regulations for practice in state facilities.

Initiates appropriate assessment of client's health status ranging from focus to comprehensive depending upon setting.

Obtains client's health history during interview of client and review of pertinent health records.

Performs physical examinations.

Consults with colleagues and other health professionals as appropriate.

Orders pertinent diagnostic tests and procedures.

Performs intervention and treatment within the scope of advanced nursing practice.

Performs delegated medical procedures as directed.

Interprets health information and establishes diagnosis consistent with accumulated data.

Formulates treatment plan and ensures timely provisions for necessary health services.

Orders necessary medications and other therapeutic equipment and supplies within the scope of practice.

Educates and informs client regarding the nature of illness and progress of evaluation/treatment.

Educates client regarding health promotion and disease prevention.

Analyzes accumulated health information and collects additional observational interview information through physical examination and diagnostic data modifying treatment as appropriate.

Participates in various committees to improve the quality of health care.

Participates in the collection and preparation of reports on patient care activities.

Participates in research projects and preparation of articles for publication.

Conducts audits related to advanced health care practice techniques and participates in quality assurance programs.

Maintains current knowledge in field of practice and informs staff of changes.

## JOB QUALIFICATIONS
### Knowledge, Skills, and Abilities

> **NOTE:** Considerable knowledge is required at the experienced level, thorough knowledge is required at the advanced level, and extensive knowledge is required at the second and third advanced levels.

Knowledge of general nursing principles and practices.

Knowledge of scientific principles and specialized techniques used in the practice of nursing.

Knowledge of current nursing technology and methods.

Skill in the application of nursing techniques.

Ability to assess the effectiveness of nursing care, and to recommend changes to nursing care programs or methods.

Ability to carry out detailed instructions.

Ability to administer medications and implement treatment plans.

Ability to instruct others on promotion of health and prevention of disease.

Ability to provide nursing and health care direction to nursing support personnel.

Ability to maintain composure under stressful situations.

Ability to maintain records, and prepare reports and correspondence related to the work.

Ability to communicate effectively with others.

Ability to maintain favorable public relations.

## Additional Knowledge, Skills, and Abilities

Registered Nurse 12 - 14

(Emergency/Clinic Nurse):

Knowledge of the operational and technical problems involved in the administration of a specialized nursing program.

Knowledge of the assigned nursing specialty.

## Working Conditions

Most positions are located in a mental health or correctional facility; therefore the work may involve the treatment of non-cooperative patients, clients with psychosocial problems and needs, or chronic and acute health problems.

Some jobs require an employee to be exposed to disease and illness.

## Physical Requirements

The job duties require the employee to handle the physical demands of the work, including performing CPR, lifting at least 30 pounds, walking up and down stairs, positioning patients, walking long distances, standing for prolonged periods, and using restraints and aggressive behavior management practices. Employee must be able to work longer than eight hours in a day, if required.

## Education

Registered Nurse P11-13:

Completion of a degree in nursing or nursing school educational program accepted for registered nurse licensure by the Michigan Board of Nursing.

Registered Nurse 14:

Completion of a degree in nursing or nursing school educational program accepted for a nurse anesthetist or nurse practitioner specialty certification by the Michigan Board of Nursing.

## Experience

Registered Nurse P11

No specific type or amount is required.

Registered Nurse 12

One year of experience equivalent to a Registered Nurse P11.

Registered Nurse 13

Two years of experience equivalent to a Registered Nurse P11, or one year equivalent to a Registered Nurse 12.

Registered Nurse 14

(Nurse Anesthetist): Three years of specialized, technical experience as a registered nurse anesthetist.

(Nurse Practitioner): Three years of specialized, technical experience as a registered nurse practitioner.

### Alternate Education and Experience

Registered Nurse 12

Possession of a master's degree in nursing or possession of a bachelor's degree in nursing and six months of experience equivalent to a Registered Nurse P11 may be substituted for the experience requirement.

Registered Nurse 13

Possession of a master's degree in nursing and one year of experience equivalent to a Registered Nurse 12; or, possession of a bachelor's degree in nursing and eighteen months of experience equivalent to a Registered Nurse P11; or, possession of a bachelor's degree in nursing and one year of experience equivalent to a Registered Nurse 12 may be substituted for the experience requirement.

### Special Requirements, Licenses, and Certifications

Registered Nurse P11-14:

Possession of a Michigan registered nurse license in good standing.

Registered Nurse 14 (Nurse Anesthetist):

Certification as a registered nurse anesthetist.

Registered Nurse 14 (Nurse Practitioner):

Certification as a Nurse Practitioner.

The Department of Corrections may screen out applicants who have been convicted of a felony in accordance with Public Act 191 of 2017. Applicants who have been convicted of a misdemeanor or felony are ineligible for employment with the Department of Corrections until satisfactory completion of any sentence imposed, including parole or probation.

**NOTE:** Equivalent combinations of education and experience that provide the required knowledge, skills, and abilities will be evaluated on an individual basis.

### JOB CODE, POSITION TITLES AND CODES, AND COMPENSATION INFORMATION

| Job Code | Job Code Description |
| --- | --- |
| REGNURSE | REGISTERED NURSE |

| Position Title | Position Code | Pay Schedule |
| --- | --- | --- |
| Registered Nurse-1 | REGNURS1 | NERE-192 |
| Registered Nurse-2 | REGNURS2 | NERE-193 |
| Registered Nurse-E | REGNURSE | W22-021 |
| Registered Nurse-1 | REGNURS1 | W22-022 |
| Registered Nurse-2 | REGNURS2 | W22-023 |
| Registered Nurse-3 | REGNURS3 | W22-038 |

LP

11/29/2020

# Exhibit 2

**MICHIGAN CIVIL SERVICE COMMISSION**
**JOB SPECIFICATION**

## PHYSICIAN ASSISTANT

### JOB DESCRIPTION

Employees in this job function as professional, mid-level, health care practitioners, administering and overseeing a variety of assignments related to the provision of primary and inpatient health care services for patients of state facilities.  Employees provide health care services as dependently licensed professionals working within their legally-defined scope of practice.

There are three classifications in this job.


### Position Code Title - Physician Assistant-E

Physician Assistant P11

This is the experienced level.  The employee performs a full range of professional health care practitioner assignments as a Physician Assistant in a full-functioning capacity.  Considerable independent judgment is used to make decisions in carrying out assignments that have significant impact on services or programs.  Guidelines may be available, but require adaptation or interpretation to determine appropriate courses of action.

### Position Code Title - Physician Assistant-A

Physician Assistant 12

This is the first advanced level.  The employee may function as a lead worker or senior worker.  At this level, employees are responsible for overseeing the work assignments of other professionals or have regular assignments which have been recognized by Civil Service as having significantly greater complexity than those assigned at the experienced level.

### Position Code Title - Physician Assistant-2A

Physician Assistant 13

This is the second advanced level.  The employee serves as a first-level staff specialist in a recognized medical area of specialty that has been assigned by the agency and accepted by Civil Service.


### JOB DUTIES

> **NOTE:** The job duties listed are typical examples of the work performed by positions in this job classification.  Not all duties assigned to every position are included, nor is it expected that all positions will be assigned every duty.

Accepts referral of patients from nursing staff, other health care professionals, custodial, and administrative staff.

Initiates an appropriate assessment of patient's health status, ranging from focused to comprehensive, depending upon the setting (e.g., emergency, structured screening, scheduled visit).

Obtains patients' health history from interview of patient and others, and from review of pertinent health records.

Performs physical examinations.

Consults with colleagues, supervising Physicians, specialists, and other health professionals as appropriate.

Orders pertinent diagnostic tests and procedures.

Performs diagnostic tests and procedures and therapeutic procedures, within the scope of practice, including venipuncture; intradermal tests; intramuscular and subcutaneous injections; electro-cardiogram; control of external hemorrhage; application of dressings and bandages; administration of medications; intravenous fluids; removal of superficial foreign bodies; cardiopulmonary resuscitation; auditory screening; visual screening; and aseptic and isolation techniques.

Performs medical procedures including incisions and drainage, wound care, debridgment, and suturing of lacerations; and applies and removes casts and traction devices.

Collects specimens for and carries out commonly performed blood, urine, and stool analyses and cultures.

Interprets health information and establishes diagnoses consistent with the accumulated data.

Formulates treatment plan, ensuring timely provision of necessary health care services.

Orders necessary medications and other therapeutic equipment and supplies within the scope of practice.

Educates and informs patients regarding the nature of the illness and the progress of evaluation and treatment.

Educates patients regarding health promotion and disease prevention.

Analyzes accumulated health information and collects additional observational, interview, historical, physical examination, and diagnostic data, modifying treatment as appropriate.

Makes health record entries which are legible, concise, and timely.

Advocates for the rights of patients.

Provides primary clinical therapy and treatment of individual and groups of patient(s).

Participates in formulating, interpreting, implementing, and evaluating objectives, policies, and procedures.

Participates in various committees to improve the quality of health care.

Participates in the collection and preparation of reports on patient care activities.

Participates in research projects and in the preparation of articles for publication.

Conducts audits related to advanced practice health care techniques and takes part in quality assurance programs.

Maintains current knowledge in the field of practice and informs staff of changes.

Maintains records and prepares reports and correspondence related to the work.

Performs related work as assigned.

## Additional Job Duties

Physician Assistant 12 (Lead Worker)

Oversees the work of professional staff by making and reviewing work assignments, establishing priorities, coordinating activities, and resolving related work problems.

Physician Assistant 12 (Senior Worker)

Performs on a regular and recurring basis work that is identified by the agency and accepted by Civil Service as more complex than work performed at the experienced level.

Physician Assistant 13

Provides expertise in a medical specialty area that has been identified by the agency and accepted by Civil Service.

## JOB QUALIFICATIONS

### Knowledge, Skills, and Abilities

> **NOTE:** Considerable knowledge is required at the experienced level, thorough knowledge is required at the advanced level, and extensive knowledge is required at the second advanced level.

Knowledge of health sciences, including anatomy, physiology, biochemistry, pathophysiology, pharmacology, and microbiology.

Knowledge of the fields of specialized medicine including internal medicine, general surgery, surgical subspecialties, obstetrics and gynecology, dermatology, emergency medicine, and psychiatry.

Knowledge of laboratory medicine.

Knowledge of patient history and physical examination methods.

Knowledge of clinical medical procedures.

Knowledge of patient rights and ethical professional practices.

Skill in performing physical examinations, and routine clinical and emergency procedures.

Skill in utilizing appropriate laboratory techniques.

Ability to develop a therapeutic relationship with patients.

Ability to relate and interpret medical data.

Ability to identify normal and abnormal findings and initiate appropriate follow-up.

Ability to serve as a member of a team.

Ability to provide direction and leadership to others.

Ability to maintain records, and prepare reports and correspondence related to the work.

Ability to communicate effectively with others.

Ability to maintain favorable public relations.

### Additional Knowledge, Skills, and Abilities

Physician Assistant 12 (Lead Worker)

Ability to organize and coordinate the work of others.

Ability to set priorities and assign work to other professionals.

Physician Assistant 12 (Senior Worker)

Ability to perform on a recurring basis work that is of a highly complex nature.

Physician Assistant 13

Knowledge of a specialized medical area.

### Working Conditions

Some jobs are located in a correctional facility, mental health facility, social services agency, or hospital facility.

**Physical Requirements**

The job duties require an employee to bend and/or stand for extended periods.

The job duties require an employee to work under stressful conditions.

The job duties require an employee to handle the physical demands of the work, including lifting and restraining patients.

**Education**

Possession of a bachelor of science degree in medicine.

**Experience**

Physician Assistant P11

No particular type or amount is required.

Physician Assistant 12

One year of professional experience equivalent to a Physician Assistant P11.

Physician Assistant 13

Two years of professional experience equivalent to a Physician Assistant, including one year equivalent to a Physician Assistant 12.

**Alternate Education and Experience**

Physician Assistant P11 - 13

Completion of a professional, physician assistant program may be substituted for the education requirement.

**Special Requirements, Licenses, and Certifications**

Certification as a Physician Assistant by the National Commission on the Certification of Physician Assistants (NCCPA).

**NOTE:** Equivalent combinations of education and experience that provide the required knowledge, skills, and abilities will be evaluated on an individual basis.

**JOB CODE, POSITION TITLES AND CODES, AND COMPENSATION INFORMATION**

| Job Code | Job Code Description | |
|---|---|---|
| PHYSCNAST | PHYSICIAN ASSISTANT | |

| Position Title | Position Code | Pay Schedule |
|---|---|---|
| Physician Assistant-E | PHYASTE | W22-031 |
| Physician Assistant-A | PHYASTA | W22-063 |
| Physician Assistant-2A | PHYAST2A | W22-064 |

# Exhibit 3

**MICHIGAN CIVIL SERVICE COMMISSION**
**JOB SPECIFICATION**

# CORRECTIONS SECURITY INSPECTOR

## JOB DESCRIPTION

Employees in this job serve as Corrections Security Inspectors responsible for functioning as the highest-ranking security official at a correctional facility on an assigned shift. The inspector is responsible for matters related to the enforcement of all prescribed security rules and regulations affecting the discipline, custody, security, and safety of the facility.

There is one classification in this job.

## Position Code Title - Corrections Security Inspector

Corrections Security Inspector 13

This is the experienced level. Work is performed under administrative direction from a Deputy Prison Warden and requires extensive knowledge of the Department of Corrections and the facility's rules and regulations. The employee exercises technical supervision related to custody, security, and discipline over all custody and security staff during an assigned shift.

## JOB DUTIES

**NOTE:** The job duties listed are typical examples of the work performed by positions in this job classification. Not all duties assigned to every position are included, nor is it expected that all positions will be assigned every duty.

Serves as the highest-ranking security official on an assigned shift.

Conducts unscheduled inspections to ensure that all personnel remain alert, diligent, and on their assigned posts or other assignments.

Evaluates and verifies employee performance through the review of completed work.

Conducts employee or prisoner investigations and resulting disciplinary conferences, including selecting, administering, and documenting progressive and disciplinary measures.

Handles issues related to union-management relationships and exercises responsibility for administration of the union contract.

Performs regularly scheduled inspections of all parts of the facility to review compliance with critical policies and procedures such as, critical tool control, key control, prisoner count procedures, emergency equipment and preparedness, etc.

Collects and maintains intelligence on prisoners, prisoner groups, and activities.

Maintains records, prepares reports, writes and/or revises related policies and/or procedures, and composes correspondence relative to the work.

Reviews security perimeter check reports for breaks or problems.

Serves as "duty deputy" in charge of the facility during evenings, weekends, and holidays on a rotating basis.

Directs contraband control and the shakedown of persons and buildings at frequent intervals.

Maintains evidence lockers and disposes of contraband and other evidence as necessary.

Monitors and evaluates program and organizational performance to assess efficiency and effectiveness.

Applies the laws, regulations, and principles of equal opportunity to personnel situations.

Serves on various facility committees as assigned.

Serves as liaison with State Police and local law enforcement authorities.

Performs related work as assigned.

## JOB QUALIFICATIONS
### Knowledge, Skills, and Abilities

Extensive knowledge of Department of Corrections and facility rules, regulations, policies, and procedures.

Extensive knowledge of the methods and techniques for ensuring the safety, security, and custody of prisoners.

Ability to perform detailed and difficult inspections within a correctional setting.

Ability to observe critically, obtain accurate data, and prepare reports.

Ability to direct and motivate others.

Ability to think and act quickly and appropriately in emergencies.

Ability to remain calm under tension and stress.

Ability to command respect and compliance with rules and regulations from correctional employees and prisoners.

### Working Conditions
The job is located in a correctional facility requiring direct contact with prisoners.

The job duties require the employee to work in a hostile and stressful environment.

### Physical Requirements
The job duties require an employee to be absent of any physical limitation which would impair effective performance in the Department of Corrections.

### Education
Completion of 15 semester (23 term) credits in one or a combination of the following: correctional administration, criminal justice, criminology, psychology, social work, sociology, counseling and guidance, educational psychology, family relations, pastoral counseling, or law enforcement.

### Experience
Corrections Security Inspector 13

Two years of experience equivalent to a Corrections Shift Supervisor 11 or Assistant Resident Unit Supervisor 11; OR, one year equivalent to a Corrections Shift Supervisor 12 or Resident Unit Manager 13.

### Special Requirements, Licenses, and Certifications
Positions in this class are test-designated and subject to pre-appointment and random-selection drug and alcohol testing.

The Department of Corrections may screen out applicants who have been convicted of a felony in accordance with Public Act 191 of 2017. Applicants who have been convicted of a misdemeanor or felony are ineligible for employment with the Department of Corrections until satisfactory completion of any sentence imposed, including parole or probation.

**NOTE:** Equivalent combinations of education and experience that provide the required knowledge, skills, and abilities will be evaluated on an individual basis.

## JOB CODE, POSITION TITLES AND CODES, AND COMPENSATION INFORMATION

**Job Code**
CORSECISP

**Job Code Description**
CORRECTIONS SECURITY INSPECTOR

**Position Title**
Corrections Security Inspector

**Position Code**
CORSCISP

**Pay Schedule**
NERE-131

JZ
01/27/2019

# Exhibit 4

**MICHIGAN CIVIL SERVICE COMMISSION**
**JOB SPECIFICATION**

## ASSISTANT DEPUTY WARDEN

### JOB DESCRIPTION

Employees in this job direct and participate in a variety of activities involving the administration of custodial, treatment, education, personnel, and business programs necessary for the operation of correctional facilities. Under general supervision from a State Deputy Warden and Senior Executive Warden, the employee works within general methods and procedures and exercises considerable independent judgment to adapt and apply the guidelines to specific situations. The work requires knowledge of the policies, procedures, laws, and regulations governing the operation of adult correctional facilities within the state, and supervisory techniques, personnel policies, and procedures.

There is one classification in this job.

### Position Code Title - Assistant Deputy Warden-3

Assistant Deputy Warden 14

The employee functions as an assistant deputy warden, a first-line manager of professional or professional equivalent custody and security and/or program staff in a correctional facility.

### JOB DUTIES

**NOTE:** The job duties listed are typical examples of the work performed by positions in this job classification. Not all duties assigned to every position are included, nor is it expected that all positions will be assigned every duty.

Selects and assigns staff, ensuring equal employment opportunity in hiring and promotion.

Coordinates activities by scheduling work assignments, setting priorities, and directing the work of subordinate employees.

Evaluates and verifies employee performance through the review of completed work assignments and work techniques.

Identifies staff development and training needs and ensures that training is obtained.

Ensures proper labor relations and conditions of employment are maintained.

Maintains records, prepare reports, and composes correspondence relative to the work.

Establishes and maintains custody, security, and control measures at a state correctional facility.

Supervises and controls the inside movement of prisoners, including initial assignment to prison units and transfers within the institution.

Implements policies and develops procedures in area of responsibility (housing, treatment, custody, or security).

Supervise staff in the classification and orientation of new prisoners and coordination of prisoner program activities such as substance abuse and self-help programs, hobby craft, prisoner groups, leisure activities, and recreation and athletic programs.

Reviews written communications from prisoners and interviews them regarding special or personal problems.

Develops and implements procedures for educational and treatment programs based on department policies.

Serves as a facility representative to central office, other state departments, local agencies, and the public.

Performs related work as assigned.

## JOB QUALIFICATIONS
### Knowledge, Skills, and Abilities

Knowledge of the principles and methods of prison administration.

Knowledge of the routines, procedures, and techniques of prison work.

Knowledge of the organization and operation of a correction classification system.

Knowledge of the correction facility education and rehabilitation programs.

Knowledge of the laws, rules, and regulations of the state prison system and the Department of Corrections.

Knowledge of training and supervisory techniques.

Knowledge of employee policies and procedures.

Knowledge of equal employment opportunity practices.

Knowledge of employee organization contract agreements.

Knowledge of techniques of counseling and providing treatment and of the agencies and organizations contacted for this treatment.

Ability to instruct, direct, and evaluate employees.

Ability to deal tactfully and effectively with others.

Ability to maintain discipline and control over staff and residents in a correctional facility.

Ability to organize and direct a prison treatment program.

Ability to issue and enforce rules and regulations.

Ability to direct an institution program for safeguarding residents.

Ability to think and act quickly in emergencies.

Ability to make prompt decisions and interpretations in the absence of established procedures.

### Working Conditions

Some jobs require an employee to work in a hostile environment.

Some jobs require an employee to work in adversarial situations.

### Physical Requirements

*None*

### Education

Possession of a bachelor's degree in any major.

## Experience

Assistant Deputy Warden 14

Four years of professional experience providing services in an adult state corrections setting, including two years equivalent to the P11 level; four years equivalent to an Assistant Resident Unit Supervisor 11; or, two years as a Corrections Shift Supervisor 13 or Corrections Security Inspector 13.

## Alternate Education and Experience

Assistant Deputy Warden 14

Education level typically acquired through completion of high school and three years of experience equivalent to a Corrections Shift Supervisor 13 or Corrections Security Inspector 13 may be substituted for the education and experience requirements.

## Special Requirements, Licenses, and Certifications

Positions in this class are test-designated and subject to pre-appointment and random-selection drug and alcohol testing.

The Department of Corrections will not hire individuals who have been convicted of a felony or who have felony charges pending, in accordance with Public Act 140 of the Public Acts of 1996.

**NOTE:** Equivalent combinations of education and experience that provide the required knowledge, skills, and abilities will be evaluated on an individual basis.

## JOB CODE, POSITION TITLES AND CODES, AND COMPENSATION INFORMATION

| Job Code | Job Code Description | |
| --- | --- | --- |
| ASTDEPWAR | ASSISTANT DEPUTY WARDEN | |

| Position Title | Position Code | Pay Schedule |
| --- | --- | --- |
| Assistant Deputy Warden-3 | ASTDWRD3 | NERE-186 |

SC

08/13/2017

# Exhibit 5

**MICHIGAN CIVIL SERVICE COMMISSION**
**JOB SPECIFICATION**

## SENIOR EXECUTIVE WARDEN

### JOB DESCRIPTION

Senior Executive Warden positions are part of the Senior Executive Service (SES) authorized and defined by Civil Service Commission Rule 4-7. Appointments are limited to a term not to exceed two years. Incumbents may be re-appointed to additional terms. Additional conditions of employment specific to the SES are addressed in the SES rule.

Employees in this job are responsible for the administration of custodial, treatment, education, personnel, and business programs necessary for the operation of a correctional facility. The employee, under executive direction, develops and implements new approaches to departmental administration. The employee is required to plan and direct specific departmental activities and, in conjunction with divisional management staff, reviews and evaluates the work of program personnel to ensure conformance with general guidelines, methods, techniques, policies, and laws. Supervisory functions include approving leaves, conducting service ratings, counseling employees, disciplining employees, participating in employee grievance procedures, and the hiring and training of personnel. Due to the critical or sensitive function of the office or bureau, the employee plays an active and ongoing role in the formulation and interpretation of department or agency policy. Positions in this classification typically direct professional and nonprofessional staff in the performance of work necessary to fulfill the mission of the Department of Corrections.

There is one classification in this job.

### Position Code Title - Senior Executive Warden

Senior Executive Warden 17

The employee serves as a warden (divisional administrative director) of a facility within the Department of Corrections. The employee serves as a member of the department director's top policy advisory staff, committee, or council and reports to a Department of Corrections Executive.

### JOB DUTIES

**NOTE:** The job duties listed are typical examples of the work performed by positions in this job classification. Not all duties assigned to every position are included, nor is it expected that all positions will be assigned every duty.

Maintains the security of the facility as well as its staff and employees.

Formulates current and long-range programs, plans, and policies for the divisional programs.

Establishes program objectives, goals, and priorities and determines operating policies and implementation methods within the context of overall agency policies and guidelines.

Reviews progress and activity reports, assesses effectiveness of operations, and determines need for improvement.

Develops budget recommendations for capital outlay, personnel services, equipment, and materials.

Oversees the operational budget of a correctional facility.

Ensures completion of mandatory training for all staff.

Ensures adherence to departmental policies and procedures.

Writes and/or approves the writing and implementation of policies and procedures within the facility.

Selects and assigns staff, assuring equal employment opportunity in hiring, promotion, and other employment practices; identifies staff development needs and assures that training is obtained; and, assures that proper labor relations and conditions of employment are maintained.

Advises staff in the resolution of sensitive, complex, or precedent-setting situations; determines appropriate course of action; assigns responsibilities and monitors actions and responses.

Directs and reviews research in such areas of program operations as management systems development, target audience needs assessment, and program evaluation.

Conducts staff meetings and conferences with assistants to discuss operating problems, organization, budgetary matters, personnel matters, technical problems, and the status of programs and projects.

Drafts statements, prepares reports, press releases, and speeches on program and policy issues.

Addresses citizen groups, legislative committees, members of the press, and others regarding program and policy issues, as required.

Reviews legislative analyses and proposed legislation and determines or recommends department position and course of action; interprets legislation to staff, other agencies, and the public; assures conformance of agency and operating policies, rules, guidelines, and procedures with legislative mandates.

Advises Executive Office, and governing boards or commissions of policy issues and program accomplishments.

Generates public and staff confidence, interest, and participation in departmental programs; motivates staff toward the accomplishment of program objectives; influences authorities to favorable actions regarding departmental operations.

## JOB QUALIFICATIONS
### Knowledge, Skills, and Abilities

Extensive knowledge of state and federal legislative processes.

Extensive knowledge of federal, state, and local relationships as these impact on the operations of a major state department.

Extensive knowledge of current literature in the field.

Extensive knowledge of training and supervisory techniques.

Extensive knowledge of employee policies and procedures.

Thorough knowledge of state government organization and functions.

Thorough knowledge of the principles and techniques of administrative management, including organization, planning, staffing, training, budgeting, and reporting.

Thorough knowledge of the principles and methods of prison administration.

Thorough knowledge of the routines, procedures and techniques of prison work.

Thorough knowledge of recent developments in the treatment of prisoners: medical and psychiatric attention, development of social attitudes, development of employment potentials and leisure interests.

Thorough knowledge of the laws and regulations of and pertaining to the state prison system and to the Department of Corrections.

Thorough knowledge of program planning, development, and evaluation methods.

Thorough knowledge of fiscal planning and management.

Thorough knowledge of staffing requirements and training necessary for the accomplishment of agency goals.

Thorough knowledge of labor relations, fair employment practices, and equal employment opportunity.

Thorough knowledge of public relations techniques.

Ability to instruct, direct, and evaluate employees.

Ability to deal tactfully and effectively with others.

Ability to maintain discipline and control over staff and prisoners in a correctional facility.

Ability to issue and enforce rules and regulations.

Ability to direct an institution program for safeguarding prisoners.

Ability to direct a complex treatment program for prisoners.

Ability to assign and direct the work of personnel.

Ability to think and act quickly in emergencies.

Ability to make prompt decisions and interpretations on questions of established procedure.

Ability to plan, make recommendations and direct actions regarding training courses, policy revision, direction and programming as it relates to the specific correctional facility.

Ability to administer a complex program.

Ability to appropriately allocate available resources.

Ability to plan, direct, and coordinate program and administrative activities of a complex, interrelated, and interdependent nature, where unknowns and numerous contingency factors are involved.

Ability to analyze and appraise facts and precedents in making administrative decisions, to get to the source of a problem, and to probe and obtain critical facts from varied sources.

Ability to recommend policies, procedures, and problem resolutions, based on evidence and knowledge of the administrator's, deputy director's, or director's viewpoint.

Ability to formulate policies and procedures based on information of a conceptual nature from varied and complex sources.

Ability to motivate and lead others in the accomplishment of a task.

Ability to present ideas effectively at a level of style, grammar, organization and technical construction expected at a management level.

Ability to establish and maintain effective relationships, under varied conditions, with government officials, private industry leaders, the media, professional personnel, a variety of people at all management levels.

Ability and willingness to delegate assignments, authority, and responsibility, to determine where a task can most appropriately be accomplished, and to establish management controls for follow-up.

## Working Conditions

Jobs are located in correctional facilities and may require direct contact with prisoners.

Some jobs require an employee to work in a hostile environment.

## Physical Requirements

The job duties require an employee to be absent of any physical limitation which would impair effective performance.

The job duties require an employee to work under stressful conditions.

## Education

Possession of a bachelor's degree in any major.

## Experience

Senior Executive Warden 17

Five years of professional experience including two years of experience as a professional manager or equivalent experience.

## Alternate Education and Experience

Senior Executive Warden 17

Education level typically acquired through completion of high school and five years of experience equivalent to a Corrections Shift Supervisor 13 or Corrections Security Inspector 13 may be substituted for the education and experience requirements.

## Special Requirements, Licenses, and Certifications

The Department of Corrections may screen out applicants who have been convicted of a felony in accordance with Public Act 191 of 2017. Applicants who have been convicted of a misdemeanor or felony are ineligible for employment with the Department of Corrections until satisfactory completion of any sentence imposed, including parole or probation.

**NOTE:** Equivalent combinations of education and experience that provide the required knowledge, skills, and abilities will be evaluated on an individual basis.

## JOB CODE, POSITION TITLES AND CODES, AND COMPENSATION INFORMATION

| **Job Code** | **Job Code Description** |
| --- | --- |
| SENIORWAR | SENIOR EXECUTIVE WARDEN |

| **Position Title** | **Position Code** | **Pay Schedule** |
| --- | --- | --- |
| Senior Executive Warden | SENEXWAR | NERE-071P |

JZ

01/27/2019

# Exhibit 6

**MICHIGAN DEPARTMENT OF CORRECTIONS**

# MICHIGAN DEPARTMENT OF CORRECTIONS - BUREAU OF HEALTH CARE SERVICES

PATIENT:                SHERWIN SHELTON
DATE OF BIRTH:      10/08/1972
DATE:                  12/09/2011 2:48 PM

## RMO REVIEW

Requesting Physician:

**Off-guideline Medical Details and Special Accomodations**

Description
Athletic shoes
shoes to accommodate AFO braces.

Reason
Bilateral foot drop, deformity of both legs and feet. Needs athletic

Approved
apoproved.

Deferred

Review Date

**Document generated by: Haresh B. Pandya, MD 12/09/2011 2:48 PM**

Name:SHELTON, SHERWIN
Inmate ID: 305404
DOB: 10/08/1972

# Exhibit 7

# Michigan Department of Corrections
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | Shelton; Sherwin Terrell | | | Off #: | 0305404 |
| Date of Birth: | 10/08/1972 | Sex: | M | Facility: | STF |
| Note Date: | 10/26/2020 12:58 | Provider: | Block, Jordan [JB20] PA | Unit: | H |

Chart Review/Update encounter performed at Non Patient Contact.

**Administrative Notes:**

ADMINISTRATIVE NOTE 1 Provider: Block, Jordan [JB20] PA

Patient's details in need of renewal. Will submit request for renewal now.

**New Consultation Requests:**

| Consultation/Procedure | Due Date | Priority | Translator | Language |
|---|---|---|---|---|
| ACMO | | Routine (review within 14 days) | No | , |

Subtype:

ACMO

Reason for Request:

47 YO BM w/ Hx of Spina Bifida, acquired bilateral pes cavus lower extremities (club feet, worse in left foot) and gunshot injury to left lower leg who`s wearing Left Double Upright AFO and ortho shoes for many years by followed by Orthotic at DWH. His shoes somewhat frequently break down and PT repairs or replaces almost Q6months. Seen by Orthotic on 12/05

Provisional Diagnosis:

Requesting ACMO approval for continuation of Orthopedic Shoes. Last approved on 10-28-19 for left double upright AFO repair and a pair of orthopedic shoes. ACMO expiration 10-28-20.

| | | | | |
|---|---|---|---|---|
| ACMO | | Routine (review within 14 days) | No | |

Subtype:

ACMO

Reason for Request:

47 YO BM w/ Hx of Spina Bifida, acquired bilateral pes cavus lower extremities (club feet, worse in left foot) and gunshot injury to left lower leg who`s wearing Left Double Upright AFO and ortho shoes for many years by followed by Orthotic at DWH. His shoes somewhat frequently break down and PT repairs or replaces almost Q6months. Seen by Orthotic on 12/05

Provisional Diagnosis:

for evaluation of replacement of orthotic shoes, recommended to repair current Left Double Upright AFO. that the brace needs new straps, springs, leather strap, pull strap, boots and inserts.
Pt is also s/p left triple arthrodesis and left Achilles tendon lengthening performed on 3/13/18 w/ Dr. Tien at HFA. He is
recovering well with this.
During his visit today, he is rquesting replacement of AFO brace/Orthopedic shoes as he demonstrates instability of AFO brace (verified by provider) and clicking noise at orthopedic shoe. He reports that the maintenance crew has attempted to repair it tightening screws on brace. This is a recurrent theme as this was a similar request as what was described 11-2018 with ACMO request.
Requesting ACMO approval for continuation of AFO brace. Last approved on 10-28-19 for left double upright AFO repair and a pair of orthopedic shoes. ACMO expiration 10-28-20.

| | | | | |
|---|---|---|---|---|
| **Co-Pay Required:** | No | **Cosign Required:** No | | |
| **Telephone/Verbal Order:** | No | | | |
| **Standing Order:** | No | | | |

## Michigan Department of Corrections
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | Shelton, Sherwin Terrell | | | Off #: | 0305404 |
| Date of Birth: | 10/08/1972 | Sex: | M | Facility: | STF |
| Note Date: | 10/26/2020 15:26 | Provider: | Block, Jordan [JB20] PA | Unit: | H |

Chart Review/Update encounter performed at Non Patient Contact.

**Administrative Notes:**

ADMINISTRATIVE NOTE  1          Provider:  Block, Jordan [JB20] PA

ACMO indefinitely approved Left Double Upright AFO brace and Orthopedic Shoes. Will update details now.


**Co-Pay Required:**          No          **Cosign Required:**  No

**Telephone/Verbal Order:**  No

**Standing Order:**          No

Completed by Block, Jordan [JB20] PA on 10/26/2020 15:30

# Exhibit 8

**Michigan Department of Corrections**                    STF-2020-03-239-12Z

**Grievance Step II Response**                    **SHELTON 305404**

**NOTE:** *An extension was requested and approved for this response to appeal.*

Grievant claims that STF Health Care failed to ensure timely provision of his (repaired) AFO brace. Grievant reports that he dropped the brace off at DWH Orthotics in January for repair and was advised that he should return in one to two weeks to pick up the repaired brace. Grievant claims that STF Health Care failed to ensure that this follow-up appointment occurred in a timely manner.

Review of the electronic medical record reveals that grievant was seen at the DWH Orthotics clinic on 1/14/2020 for repair of his AFO brace and transfer of the brace to new boots. HE was issued "Surefit" boots to wear in the interim. The orthotist requested that STF Health Care submit a request for approval for grievant to return to DWH the following week to be fitted with these items. This request was reviewed by the medical provider on 1/22/2020 when the provider submitted a request for approval of the follow-up visit. The request was approved on 1/27/2020. A similar request was approved on 2/5/2020. Grievant has not returned to DWH Orthotics to date. It is noted that he has been issued an ACE wrap pending that appointment.

It is acknowledged that earlier return to DWH Orthotics would have been preferred following the 1/14/2020 appointment. As outlined in the Step I response, the State of Emergency currently in effect re: the COVID-19 pandemic has resulted in a temporary suspension of off-site visits for nonurgent issues. This respondent contacted STF Health Care and was assured that grievant will be returned to DWH Orthotics as soon as routine off-site visits resume and the necessary appointment can be scheduled. Grievant is encouraged to promptly notify Health Care should any adverse symptoms persist or worsen in the interim.

Grievance partially resolved.

Patricia Lamb, RN, BSN          *Patricia Lamb, RN, BSN* PL          June 18, 2020
Respondent Name                 Respondent Signature              Date

# Exhibit 9

MICHIGAN DEPARTMENT OF CORRECTIONS-Bureau of Health Care

4835-7549
CHJ-549 11/05

## HEALTH CARE REQUEST

### PRISONER: COMPLETE SECTIONS A THROUGH D

**A** NAME: S. Shelton  FACILITY: STL

NUMBER: 305404 LOCK: E-23 DATE: 2-04-20

**B** This Health Care Request is for the following (check one or more): ☐ Health Record Copies ☐ Non-urgent

☐ Dental ☐ Medication Refill ☐ Medical ☐ Optometry ☐ Mental Health ☒ Urgent

**C** I have the following problems/symptoms: I would like to know why I have not been sent back to PT to pick my Afo brace up, I've sent kites Asking what's going on, but Nothing I walking without my Medical Equipment that may cause damage And more pain but this H/c don't care. So who do I need to have my family contact; since this H/c don't send kites to DWH

**D** NOTICE TO PRISONER

You will not be denied health care services for lack of personal funds. However, if your account does not have adequate funds, the copayment will be considered an institutional debt and shall be collected as set forth in PD 04.02.105, "Prisoner Funds".

Signing this document formally requests treatment. In addition, it authorizes the DOC to treat or arrange treatment for you and to release any necessary medical information to facilitate that treatment, to review treatment, to respond to a related grievance, or to review any appeal you may make regarding the Department's decision to charge for the care.

I have read Section D above, or it has been read to me and I understand that I will be charged $5.00 for my health care visit unless it is for one of the reasons listed below in Section F. If I am charged for this visit, I agree that the $5.00 may be taken from my account.

Prisoner Signature:  Date: 2-4-20

### PRISONER: DO NOT WRITE BELOW THIS LINE

**E** INSTRUCTIONS TO PRISONER

2020 FEB 5 AM 6:13

An appointment has been scheduled for you on: Date:

Signature:  Title:  Provider #:  Date:

**F** COPAYMENT (to be filled out by health care):

Note: If none of the exceptions listed below apply, check the box below and a copay will be charged.

Care that is:
- requested by a QHP (includes transfer assessments, chronic care clinics, intake and annual screening, and required follow-up care)
- for injuries that are work-related as documented by the prisoner's work supervisor
- requested for testing for HIV, STD's, infestations, or reportable communicable diseases
- requested for evaluation, consultation, or treatment of a mental health need
- prompted by a medical emergency (see Section I of the policy, if self-inflicted)

☐ I have reviewed the visit of _____ and certify none of these exceptions apply.
    Date

Signature:  Title:  Provider #:  Date:

Distribution: White - Health Services, Canary - Prisoner, Pink - Business Office

# Exhibit 10

MICHIGAN DEPARTMENT OF
CORRECTIONS

CSJ-247S 3/18/2019

## STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM
(Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S")

| Prisoner Last Name | Prisoner # | Lock/Location | Grievance # |
|---|---|---|---|
| Shelton | 305404 | E-23/STF | STF-20-03-0239-12Z |

| Prisoner Interviewed: | YES ☐ | NO ☒ | If "NO", Reason | Prisoner description allowed response from record. |
|---|---|---|---|---|
| Extension Granted: | YES ☐ | NO ☐ | If "YES", Enter End Date: | Click or tap to enter a date. |

**COMPLAINT SUMMARY:**
The grievant reports Nurse Supervisor was negligent to his report of not receiving his foot brace in a timely manner.

**INVESTIGATION SUMMARY:**
Healthcare received notification on February 6th, 2020 that the grievant had been approved for a return visit to Duane Waters regarding his brace. This appointment was awaiting scheduling from Duane Waters Orthotics department when notice came that routine offsite appointments were delayed to due the COVID-19 crisis. Repeat foot x-rays were done and reviewed by the onsite medical provder in March. As soon as it is safe, we will resume normal operations and the grievant will be scheduled for his offsite appointment to pick up the brace.

**APPLICABLE POLICY PROCEDURE/LLC:**
Health Services 03.04.100

**DECISION SUMMARY:**
Greivance denied.

| RESPONDENT NAME | M. Sosinski | TITLE | RN 12 |
|---|---|---|---|
| RESPONDENT SIGNATURE | | DATE | 4/15/2020 |
| REVIEWER NAME | R. Scabbo | TITLE | Unit Chief |
| REVIEWER SIGNATURE | | DATE | 4/15/2020 |

**Distribution:** Original - Step I Grievance Coordinator      Copies – 3 To Grievant (1 Prisoner Copy; 1 for Step II filing; 1 for Step III filing)

# Exhibit 11

# Michigan Department of Corrections
## Kite Response

**Offender #:** 0305404     **Offender Name:** Shelton, Sherwin Terrell

**Location:** STF - CENTRAL MICHIGAN CORRECTIONAL     **Lock:** E:023;Bot:E

| | |
|---|---|
| **Discipline:** | Medical |
| **Received Date:** | 02/05/2020 |
| **Initiated Date:** | 02/04/2020 |
| **Taken By:** | Lewis, Kaelle [KL4] RN |
| **Request Type:** | Other |
| **Request Summary:** | Inmate states, "I need to pick up my AFO brace up". |
| **Plan/Action:** | You are scheduled with HC. Look for your call out. |
| **Comments:** | |

# Exhibit 12

# Michigan Department of Corrections
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | Shelton, Sherwin Terrell | | | Off #: | 0305404 |
| Date of Birth: | 10/08/1972 | Sex: | M | Facility: | STF |
| Note Date: | 05/26/2020 20:07 | Provider: | VanHall, Carlynn [CV2] | Unit: | E |

Nursing Note encounter performed at Clinic.
**Administrative Notes:**

ADMINISTRATIVE NOTE 1    Provider: VanHall, Carlynn [CV2] RN

Prisoner to H/C for bladder irrigation appointment, discussed the use of the ace wrap while waiting for his ACMO approved brace. States the ace wrap is helping and is using it as needed. Will reschedule to check Ace wrap in 2 weeks.

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Nurse Clinical Encounter | 05/26/2020 00:00 | Nurse |

F/U with nursing for ace bandage while waiting for ACMO approved brace.

**Co-Pay Required:** No    **Cosign Required:** No

**Telephone/Verbal Order:** No

**Standing Order:** No

Completed by VanHall, Carlynn [CV2] RN on 05/26/2020 20:13

# Exhibit 13

# Michigan Department of Corrections
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Offender Name: | Shelton, Sherwin Terrell | | Off #: | 0305404 |
| Date of Birth: | 10/08/1972 | Sex: M | Facility: | STF |
| Note Date: | 05/26/2020 20:18 | Provider: VanHall, Carlynn [CV2] | Unit: | E |

Nursing Note encounter performed at Clinic.

**Administrative Notes:**

ADMINISTRATIVE NOTE   1        Provider:  VanHall, Carlynn [CV2] RN

Inmate was in for bladder irrigation. States improvement in his left leg pain while waiting for his ACMO approved brace. He uses it as needed. Detail placed for 2 weeks with Ace bandage and will reassess continuation of it. Verbalizes understanding.

Schedule:

| **Activity** | **Date Scheduled** | **Scheduled Provider** |
|---|---|---|
| Nurse Clinical Encounter | 06/09/2020 00:00 | Nurse |

F/U with nursing for ace bandage use while waiting for brace. Detail placed.

| | | | |
|---|---|---|---|
| **Co-Pay Required:** | No | **Cosign Required:** No | |
| **Telephone/Verbal Order:** | No | | |
| **Standing Order:** | No | | |

Completed by VanHall, Carlynn [CV2] RN on 05/26/2020 20:22

# Exhibit 14



**STATE OF MICHIGAN**
## OFFICE OF THE GOVERNOR
LANSING

GRETCHEN WHITMER
GOVERNOR

GARLIN GILCHRIST II
LT. GOVERNOR

# EXECUTIVE ORDER

## No. 2020-17

### Temporary restrictions on non-essential medical and dental procedures

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease.

On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401-.421, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31-.33.

The Emergency Management Act vests the governor with broad powers and duties to "cop[e] with dangers to this state or the people of this state presented by a disaster or emergency," which the governor may implement through "executive orders, proclamations, and directives having the force and effect of law." MCL 30.403(1)-(2). Similarly, the Emergency Powers of the Governor Act of 1945 provides that, after declaring a state of emergency, "the governor may promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control." MCL 10.31(1).

To mitigate the spread of COVID-19, protect the public health, provide essential protections to vulnerable Michiganders, and ensure the availability of health care resources, it is reasonable and necessary to impose temporary restrictions on non-essential medical and dental procedures.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. Beginning as soon as possible but no later than March 21, 2020 at 5:00 pm, and continuing while the state of emergency declared in Executive 2020-4 is in effect, all hospitals, freestanding surgical outpatient facilities, and dental facilities, and all state-operated outpatient facilities (collectively, "covered facilities"), must implement a plan to temporarily postpone, until the termination of the state of emergency under section 3 of Executive Order 2020-4, all non-essential procedures ("non-essential procedure postponement plan" or "plan"). For purposes of this order, "non-essential procedure" means a medical or dental procedure that is not necessary to address a medical emergency or to preserve the health and safety of a patient, as determined by a licensed medical provider.

2. A plan for a covered facility that performs medical procedures, including any medical center or office that performs elective surgery or cosmetic plastic surgery, must postpone, at a minimum, joint replacement, bariatric surgery, and cosmetic surgery, except for emergency or trauma-related surgery where postponement would significantly impact the health, safety, and welfare of the patient. A plan for a covered facility that performs medical procedures should exclude from postponement: surgeries related to advanced cardiovascular disease (including coronary artery disease, heart failure, and arrhythmias) that would prolong life; oncological testing, treatment, and related procedures; pregnancy-related visits and procedures; labor and delivery; organ transplantation; and procedures related to dialysis. A plan for a covered facility that performs medical procedures must exclude from postponement emergency or trauma-related procedures where postponement would significantly impact the health, safety, and welfare of the patient.

3. A plan for a covered facility that performs dental procedures must postpone, at a minimum: any cosmetic or aesthetic procedures (such as veneers, teeth bleaching, or cosmetic bonding); any routine hygiene appointments; any orthodontic procedures that do not relieve pain or infection, do not restore oral function, or are not trauma-related; initiation of any crowns, bridges, or dentures that do not relieve pain or infection, do not restore oral function, or are not trauma-related; any periodontal plastic surgery; any extractions of asymptomatic non-carious teeth; and any recall visits for periodontally healthy patients. If a covered facility that performs dental procedures chooses to remain open, its plan must exclude from postponement emergency or trauma-related procedures where postponement would significantly impact the health, safety, and welfare of the patient.

4. A covered facility must comply with the restrictions contained in its non-essential procedure postponement plan.

5. This order does not alter any of the obligations under law of an affected health care facility to its employees or to the employees of another employer.

6. The director of the Department of Licensing and Regulatory Affairs shall issue orders or directives pursuant to law as necessary to enforce this order.

7. Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor.

Given under my hand and the Great Seal of the State of Michigan.

Date:  March 20, 2020

Time:  12:28 pm

GRETCHEN WHITMER
GOVERNOR

By the Governor:

SECRETARY OF STATE

SENATE JOURNAL
MAR 20 2020 PM 3:16

FILED WITH SECRETARY OF STATE
ON 3/20/20 AT 2:48 P.M.

3

# Exhibit 15



GRETCHEN WHITMER
GOVERNOR

**STATE OF MICHIGAN**
OFFICE OF THE GOVERNOR
LANSING

GARLIN GILCHRIST II
LT. GOVERNOR

2020 MAR 30 AM 11:23
SECRETARY OF SENATE

## EXECUTIVE ORDER

### No. 2020-29

### Temporary COVID-19 protocols for entry into Michigan Department of Corrections facilities and transfers to and from Department custody; temporary recommended COVID-19 protocols and enhanced early-release authorization for county jails, local lockups, and juvenile detention centers

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease.

On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401-.421, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31-.33.

The Emergency Management Act vests the governor with broad powers and duties to "cop[e] with dangers to this state or the people of this state presented by a disaster or emergency," which the governor may implement through "executive orders, proclamations, and directives having the force and effect of law." MCL 30.403(1)-(2). Similarly, the Emergency Powers of the Governor Act of 1945 provides that, after declaring a state of emergency, "the governor may promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control." MCL 10.31(1).

To mitigate the spread of COVID-19, protect the public health, and provide essential protections to vulnerable Michiganders who work at or are incarcerated in prisons, county jails, local lockups, and juvenile detention centers across the state, it is reasonable and necessary to implement limited and temporary COVID-19-related protocols and procedures regarding entry into facilities operated by the Michigan Department of Corrections and transfers to and from the Department's custody; to recommend limited and temporary COVID-19-related protocols and measures for county jails, local lockups, and juvenile detention centers; and to temporarily suspend certain rules and procedures to facilitate the implementation of those recommendations.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. The Michigan Department of Corrections (the "Department") must continue to implement risk reduction protocols to address COVID-19 ("risk reduction protocols"), which the Department has already developed and implemented at the facilities it operates and which include the following:

    (a) Screening all persons arriving at or departing from a facility, including staff, incarcerated persons, vendors, and any other person entering the facility, in a manner consistent with guidelines issued by the Centers for Disease Control and Prevention ("CDC"). Such screening includes a temperature reading and obtaining information about travel and any contact with persons under investigation for COVID-19 infection.

    (b) Restricting all visits, except for attorney-related visits, and conducting those visits without physical contact to the extent feasible.

    (c) Limiting off-site appointments for incarcerated persons to only appointments for urgent or emergency medical treatment.

    (d) Developing and implementing protocols for incarcerated persons who display symptoms of COVID-19, including methods for evaluation and processes for testing, notification of the Department of Health and Human Services ("DHHS"), and isolation during testing, while awaiting test results, and in the event of positive test results. These protocols should be developed in consultation with local public health departments.

    (e) Notifying DHHS of any suspected case that meets the criteria for COVID-19 through communication with the applicable local public health department.

    (f) Providing, to the fullest extent possible, appropriate personal protective equipment to all staff as recommended by the CDC.

    (g) Conducting stringent cleaning of all areas and surfaces, including frequently touched surfaces (such as doorknobs, handles, light switches, keyboards, etc.), on a regular and ongoing basis.

    (h) Ensuring access to personal hygiene products for incarcerated persons and correctional staff, including soap and water sufficient for regular handwashing.

    (i) Ensuring that protective laundering protocols are in place.

    (j) Posting signage and continually educating on the importance of social distancing, handwashing, and personal hygiene.

    (k) Practicing social distancing in all programs and classrooms—meaning a distance of at least six feet between people in any meeting, classroom, or other group.

    (l) Minimizing crowding, including interactions of groups of 10 or more people, which may include scheduling more times for meal and recreation to reduce person-to-person contact.

2.  To mitigate the risk of COVID-19 spreading in county jails, strict compliance with the capacity and procedural requirements regarding county jail overcrowding states of emergency in the County Jail Overcrowding Act ("CJOA"), 1982 PA 325, MCL 801.51 et seq., is temporarily suspended. While this order is in effect, all actions that would be authorized under the CJOA in the event of a declaration of a county jail overcrowding state of emergency are authorized and shall remain authorized without regard to any reduction in jail population or any other such limitations on the duration of authorization imposed by the CJOA.

3.  Anyone authorized to act under section 2 of this order is strongly encouraged to consider early release for all of the following, so long as they do not pose a public safety risk:

    (a) Older people, people who have chronic conditions or are otherwise medically frail, people who are pregnant, and people nearing their release date.

    (b) Anyone who is incarcerated for a traffic violation.

    (c) Anyone who is incarcerated for failure to appear or failure to pay.

    (d) Anyone with behavioral health problems who can safely be diverted for treatment.

4.  Effective immediately, all transfers into the Department's custody are temporarily suspended. Beginning seven (7) days from the effective date of this order, and no more than once every seven (7) days, a county jail or local lockup may request that the director of the Department determine that the jail or lockup has satisfactorily implemented risk reduction protocols as described in section 1 of this order. Upon inspection, if the director of the Department determines that a county jail or local lockup has satisfactorily implemented risk reduction protocols, transfers from that jail or lockup will resume in accordance with the Department's risk reduction protocols. The director of the Department may reject transfers that do not pass the screening protocol for entry into a facility operated by the Department.

5.  Parole violators in the Department's custody must not be transported to or lodged in a county jail or local lockup unless the director of the Department has determined that such county jail or local lockup has satisfactorily implemented risk reduction protocols as described in section 1 of this order.

6.  The State Budget Office must immediately seek a legislative transfer so that counties may be reimbursed for lodging incarcerated persons that would have been transferred into the Department's custody if not for the suspension of transfers described in section 4 of this order.

7. Juvenile detention centers are strongly encouraged to reduce the risk that those at their facilities will be exposed to COVID-19 by implementing as feasible the following measures:

   (a) Removing from the general population any juveniles who have COVID-19 symptoms.

   (b) Eliminating any form of juvenile detention or residential facility placement for juveniles unless a determination is made that a juvenile is a substantial and immediate safety risk to others.

   (c) Providing written and verbal communications to all juveniles at such facilities regarding COVID-19, access to medical care, and community-based support.

   (d) To the extent feasible, facilitating access to family, education, and legal counsel through electronic means (such as telephone calls or video conferencing) at no cost, rather than through in-person meetings.

8. Unless otherwise directed by court order, for juveniles on court-ordered probation, the use of out-of-home confinement for technical violations of probation and any requirements for in-person meetings with probation officers are temporarily suspended.

9. This order is effective immediately and continues through April 26, 2020 at 11:59 pm.

Given under my hand and the Great Seal of the State of Michigan.

Date:  March 29, 2020

Time:  7:23 pm

GRETCHEN WHITMER
GOVERNOR

By the Governor:

SECRETARY OF STATE

4

FILED WITH SECRETARY OF STATE
ON 3/30/2020 AT 10:50 am

# Exhibit 16

# Michigan Department of Corrections
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | Shelton, Sherwin Terrell | | | Off #: | 0305404 |
| Date of Birth: | 10/08/1972 | Sex: | M | Facility: | STF |
| Note Date: | 10/30/2020 20:56 | Provider: | Hessbrook, Barbara | Unit: | H |

Administrative encounter performed at Clinic.
**Administrative Notes:**

ADMINISTRATIVE NOTE  **1**　　　Provider:  Hessbrook, Barbara [BH2] RN

Prisoner issued a large 4 wheeled rollater walker with hand brakes. See detail.


**Co-Pay Required:**　　No　　**Cosign Required:** No

**Telephone/Verbal Order:**　No

**Standing Order:**　　No

Completed by Hessbrook, Barbara [BH2] RN on 10/30/2020 21:09

Exhibit 17



JACKSON ORTHOPAEDICS  Shelton, Sherwin
1201 E MICHIGAN AVE          MRN: 63188955, DOB: 10/8/1972, Sex: M
JACKSON MI 49201-1855      Visit date: 4/28/2021

---

**Vital Signs**                                                                                          Most recent update: 4/28/2021  9:34 AM

Resp
18

---

## Progress Notes

**Progress Notes by Tien, Tudor, MD at 04/28/21 0930**

| Author: Tien, Tudor, MD | Service: — | Author Type: Physician |
|---|---|---|
| Filed: 04/30/21 0726 | Encounter Date: 4/28/2021 | Status: Signed |
| Editor: Tien, Tudor, MD (Physician) | | |

| | |
|---|---|
| **PATIENT NAME** | Sherwin Shelton |
| **MRN:** | 63188955 |
| **DATE OF BIRTH** | 100872 |
| **DATE OF EVALUATION:** | 4/28/2021 |

### CHIEF COMPLAINT:
Chief Complaint
Patient presents with

- Left Foot - Follow-up
    *DOS:3/13/18*
    *3Y1M15D*
    *Deformity left foot*

    *Pt is here for CT TRV. Pt reports he is having increased edema recently. He reports that he will have pain constant 5/10*

### HISTORY OF PRESENT ILLNESS:

Sherwin Shelton is a 48 y.o. male who presents to the clinic today for follow up care of left foot deformity. Pt reports he is having increased edema recently. He reports that he will have pain constant 5/10, most painful in the left midfoot extending to the medial arch. The patient reports that he is almost one year from using his AFO brace. Patient denies fever, chills, vomiting, nausea, shortness of breath or chest pain. There are no other complaints at this time.

Triple arthrodesis, lengthening left achilles tendon 3/13/2018

History is supplied by: Self

### PAST HISTORY:

Past Medical History:
Diagnosis                                                                                                                        Date

- Hypercholesterolemia
- Hypertension
- Spina bifida (CMS-hcc)

---



JACKSON ORTHOPAEDICS   Shelton, Sherwin
1201 E MICHIGAN AVE         MRN: 63188955, DOB: 10/8/1972, Sex: M
JACKSON MI 49201-1855      Visit date: 4/28/2021

## Progress Notes (continued)

**Progress Notes by Tien, Tudor, MD at 04/28/21 0930 (continued)**

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • FOOT SURGERY | Left | 2000 |
| • FOOT SURGERY | Left | 2018 |
| *Reconstuction* | | |
| • SPINE SURGERY | | |

**Allergies**

| Allergen | Reactions |
|---|---|
| • Adhesive Tape-Silicones | Rash |

**Social History**

Socioeconomic History
- Marital status:          Unknown
    Spouse name:          Not on file
- Number of children:    Not on file
- Years of education:     Not on file
- Highest education level:  Not on file
Occupational History
- Not on file
Tobacco Use
- Smoking status:         Former Smoker
- Smokeless tobacco:     Never Used
Substance and Sexual Activity
- Alcohol use:             No
- Drug use:                No
- Sexual activity:          Never
Other Topics                  Concern
- Not on file
Social History Narrative
- Not on file

**Social Determinants of Health**

Social determinant risk not applicable to this patient.

History reviewed. No pertinent family history.

No flowsheet data found.



JACKSON ORTHOPAEDICS  Shelton, Sherwin
1201 E MICHIGAN AVE  MRN: 63188955, DOB: 10/8/1972, Sex: M
JACKSON MI 49201-1855  Visit date: 4/28/2021

**Progress Notes (continued)**

**Progress Notes by Tien, Tudor, MD at 04/28/21 0930 (continued)**

No flowsheet data found.

### REVIEW OF SYSTEMS:

**Constitutional:** Denies fever, chills.
**Musculoskeletal:** Reports ongoing left ankle and foot pain.

All remaining systems negative.

### PHYSICAL EXAMINATION:

Vitals:
04/28/21 0933
Resp:        18

**Constitutional:** No acute distress.
**Head:** Atraumatic. Normocephalic.
**Eyes:** Normal sclera.
**ENT:** Moist mucosa.
**Cardiovascular:** Not tachycardic.
**Pulmonary/Chest:** No respiratory distress. Airway patent. No tachypnea. No accessory muscle usage.
**Abdominal:** Non-distended.
**Skin:** Normal color. Visible skin is warm and dry.
**Neurological:** Alert and oriented to person, place, and time. Normal speech.
**Psychological:** Normal mood, affect.

**Musculoskeletal - Left tibial deformity, from previous gunshot by patient report**
**Gait: Right ankle rolls out when ambulating.**
**Foot Type: Bilateral pes cavus**
**Tenderness:** No tenderness to sinus tarsi, posterior tibial tendon, anterior talofibular ligament, medial eminence or metatarsal heads.
**Range of Motion:** Hindfoot, midfoot, forefoot, great toe, lesser toes are all normal.
**Strength:** 5/5 throughout. **Decreased ankle ROM with no pain**
**Sensation:** normal to light touch
**Vascular exam:** normal DP/PT pulses, brisk capillary refill.
**Skin** - normal coloration, no visible rashes, venous stasis or onychomycosis. **No sores or ulcers**

**Specific foot exams:**
**Laxity with Anterior Drawer/Talar Tilt/Varus stress.**

### RADIOLOGY:



JACKSON ORTHOPAEDICS  Shelton, Sherwin
1201 E MICHIGAN AVE       MRN: 63188955, DOB: 10/8/1972, Sex: M
JACKSON MI 49201-1855   Visit date: 4/28/2021

## Progress Notes (continued)

**Progress Notes by Tien, Tudor, MD at 04/28/21 0930 (continued)**

**X-ray 2/17/2021:** I personally reviewed the x-rays of the left ankle/foot from February 17, 2021 which demonstrate one broken screw, otherwise fusion sites have all healed in well in good alignment.

X-ray left ankle/foot 2/17/2021
IMPRESSION:
1. No significant change left foot and ankle.
2. Osteochondral defect lateral talar dome unchanged.
3. Postoperative changes mid foot and hindfoot without interval change.
4. Stable appearance fracture long fixation screw which extends into the talus.
5. Osteopenia and stable gunshot wound shrapnel.


**ASSESSMENT:**

1.   **Moderate residual cavus deformity of left foot**
2.   Ankle arthritis
3.   Arthrosis of ankle, left
4.   S/P musculoskeletal system surgery


**PLAN:**
All findings were discussed with the patient in detail.

Based on my independent interpretation of imaging and clinical examination, will plan to have the office coordinate to ensure that the patient is able to receive his AFO brace. If he has worsening deformity, pain or ulcer development, will consider adjunctive surgery - possibly a tibial osteotomy. I would like to avoid an ankle fusion at this time, but may consider an ankle replacement.

**Follow-up in 6-12 months for further evaluation**

All questions were answered to his satisfaction. He will Return in about 6 months (around 10/28/2021). If there are any problems questions or concerns he will call and/or return to the clinic ASAP.

I have personally spent 25 minutes with the patient today, including reviewing records and cogitating about the patient's condition.


**Scribe Attestation:** By signing my name below, I, Michael Shen, attest that this documentation has been prepared under the direction and in the presence of TUDOR TIEN, MD, based on the patient's response to questions asked by provider and the provider's statements to me.

Electronically Signed: Michael Shen, Scribe. 04/28/21 11:51 AM



JACKSON ORTHOPAEDICS  Shelton, Sherwin
1201 E MICHIGAN AVE      MRN: 63188955, DOB: 10/8/1972, Sex: M
JACKSON MI 49201-1855    Visit date: 4/28/2021

**Progress Notes (continued)**

Progress Notes by Tien, Tudor, MD at 04/28/21 0930 (continued)

**Provider Attestation:** I, Tudor Tien MD, personally performed the services described in this documentation. All medical record entries made by the scribe were at my direction and in my presence. I have reviewed the chart and discharge instructions and agree that the record reflects my personal performance and is accurate and complete.

Electronically Signed: Tudor Tien, MD. 04/30/21 7:26 AM

Electronically signed by Tien, Tudor, MD at 04/30/21 0726

Patient Instructions by Shen, Michael at 04/28/21 0930

| Author: **Shen, Michael**<br>Filed: **04/28/21 1001**<br>Editor: **Shen, Michael (Scribe)** | Service: **—**<br>Encounter Date: **4/28/2021** | Author Type: **Scribe**<br>Status: **Signed** |

## Follow-up in 6-12 months

Electronically signed by Shen, Michael at 04/28/21 1001

**Lab Results**

No matching results found

**Pathology Results**

No matching results found

**Radiology Results**

No matching results found

**Cardiac Results**

No matching results found

**Other Results**

No matching results found



SPEC CTR RAD GENERAL ORTHOPAEDICS
1201 E MICHIGAN AVE
JACKSON MI 49201-1855

Shelton, Sherwin
MRN: 63188955, DOB: 10/8/1972, Sex: M
Adm: 4/28/2021, D/C: 4/28/2021

**Emergency Dept Notes**

No notes of this type exist for this encounter.

**All Notes**

No notes of this type exist for this encounter.

**Lab Results**

No matching results found

**Pathology Results**

No matching results found

**Radiology Results**

No matching results found

**Cardiac Results**

No matching results found

**Other Results**

No matching results found

## END OF REPORT

# Exhibit 18

# Michigan Department of Corrections
# Clinical Encounter

| | | | |
|---|---|---|---|
| Offender Name: Shelton, Sherwin Terrell | | Off #: | 0305404 |
| Date of Birth: 10/08/1972 | Sex: M | Facility: STF | |
| Encounter Date: 10/06/2020 09:23 | Provider: Block, Jordan [JB20] PA | Unit: H | |

Chronic Care encounter performed at Clinic.

## SUBJECTIVE:

COMPLAINT 1     Provider: Block, Jordan [JB20] PA

Chief Complaint:    CARDIOVASCULAR

Subjective:    HTN/HLP--
Patient demonstrates LDL 91 based on 09-2020 labs. Patient denies chest pains, palpitations, and/or dyspnea. Tolerating medication well without any cardiovascular issues.

**Pain Location:**

Pain Scale:

Pain Qualities:

History of Trauma:

Onset:

Duration:

Exacerbating Factors:

Relieving Factors:

Comments:

COMPLAINT 2     Provider: Block, Jordan [JB20] PA

Chief Complaint:    Urinary Problem

Subjective:    Neurogenic Bladder with Frequent UTI's--
Patient was just tested to determine if UTI noted given darkened urine. He denies flank pain and denies dysuria at this time. No overt UTI noted despite leukocytes, blood,and mucous noted. Urine culture demonstrates no growth. No changes to tx regimen at this time as result.

Last seen by UofM Urology 07-24-20. No upcoming follow up appt needed. Will continue with recommendations of UofM Urology--See most recent consult for details.

**Pain Location:**

Pain Scale:

Pain Qualities:

History of Trauma:

Onset:

Duration:

Exacerbating Factors:

Relieving Factors:

Comments:

COMPLAINT 3     Provider: Block, Jordan [JB20] PA

Chief Complaint:    Other Problem

Subjective:    Congenital Spina Bifida--
Patient's case discussed with HFA Neurosurgery NP on 09-24-20 and it was recommended that CT is necessary (L-Spine without contrast) to further determine how to proceed surgical for potential repair of severe lumbar stenosis at L4-L5.

Patient currently approved for CT L-Spine with approved neurosurgery follow up. Awaiting appts at this time.

**Pain Location:**

| | | | | |
|---|---|---|---|---|
| Offender Name: Shelton, Sherwin Terrell | | | | Off #: 0305404 |
| Date of Birth: 10/08/1972 | | Sex: M | | Facility: STF |
| Encounter Date: 10/06/2020 09:23 | | Provider: Block, Jordan [JB20] PA | | Unit: H |

Pain Scale:

Pain Qualities:

History of Trauma:

Onset:

Duration:

Exacerbating Factors:

Relieving Factors:

Comments:

COMPLAINT 4    Provider: Block, Jordan [JB20] PA

Chief Complaint:    Other Problem

Subjective:    Hx Club Foot Repair with Triple Arthrodesis--
Pt reports worsening of his left ankle pain/instability of left ankle. Was previously approved for brace and has appt to pick up brace that is pending scheduling--delay with COVID 19 protocol. Also has approved ortho f/u with Dr. Tien (HFA Ortho)-- delayed with COVID 19. Will discuss with HIM to see if can be scheduled with Dr. Tien (HFA Ortho) while awaiting brace.

Per 03-16-20 X-rays left ankle...
"FINDINGS: Re-demonstration of demineralization of the bony architecture is present. There is
evidence of extensive surgical intervention regarding trauma of the foot. A compression plate and screws is re-demonstrated of the first metatarsal cuneiform region. A large screw is identified of the cuneiform and talus for fusion. A screw is re-demonstrated of the cuboid region
extending into the cuneiform area. Also, there is evidence of transfixation of the calcaneus. As it was seen on the previous study, the large screw utilized to transfix the trauma in the region of
the calcaneus is fractured with approximately 8 mm of diastasis at the fracture site of that screw,
but no apparent movement has occurred during the interval. There is demineralization of the bony architecture.
During the interval there appears to be some resorption of the osseous architecture in the region
of the cuboid fused to the cuneiform/metatarsal area. No evidence of osteomyelitis is present. Although, the soft tissue swelling of the foot and ankle area represents some cellulitis.
IMPRESSION:
1. Previous surgical intervention of the left foot, in multiple places, for fusion. Diffuse sites appear to demonstrate no clinical change.
2. There is some bone resorption in the region of the cuboid, with the screw fused to the third cuneiform. The specific etiology is uncertain, but there is demineralization of the bony architecture throughout the left foot.
3. Fragments from a gunshot wound identified in the lower leg soft tissues. "

**Pain Location:**

Pain Scale:

Pain Qualities:

History of Trauma:

Onset:

Duration:

Exacerbating Factors:

Relieving Factors:

Comments:

COMPLAINT 5    Provider: Block, Jordan [JB20] PA

| | | |
|---|---|---|
| Offender Name: Shelton, Sherwin Terrell | | Off #: 0305404 |
| Date of Birth: 10/08/1972 | Sex: M | Facility: STF |
| Encounter Date: 10/06/2020 09:23 | Provider: Block, Jordan [JB20] PA | Unit: H |

Chief Complaint: No Complaint(s)

Subjective: AHS--
Immunizations: Up to date with Hep B series and Tdap. Unknown Hep A Ab status. Will update Hep A Ab prior to next exam. Will order immunizations if needed.
Prostate cancer screening: No known family hx prostate cancer. PSA 1.3 based on 09-2020 labs.
Colon cancer screening: No known family hx colon cancer. No need for screening yet at this time.

**Pain Location:**

Pain Scale:

Pain Qualities:

History of Trauma:

Onset: .

Duration:

Exacerbating Factors:

Relieving Factors:

Comments:

**Seen for clinic(s):** Cardiovascular

**ROS:**

**Cardiovascular**
**General**

Yes: Normal
No: Angina, Palpitation

**General**
**Constitutional Symptoms**

No: Dyspnea, Chills, Fatigue, Fever

**GI**
**General**

Yes: Normal

**GU**
**General**

Yes: Infections, Urinary Retention
No: Normal, Burning, Dysuria, Pain or Colic
See HPI. Neurogenic bladder with self catheterization.

**Musculoskeletal**
**General**

Yes: Ankle Pain, Foot Pain, Low Back Pain, Stiffness
No: Normal

**Neurological**
**Autonomic System**

Patient reports some fasciculations in right foot

**Motor System**

Yes: Abnormal Gait, Involuntary Movements, Weakness

**Sensory System**

Yes: Numbness, Paresthesia

**Pulmonary**
**Respiratory System**

Yes: Normal

Offender Name: Shelton, Sherwin Terrell
Date of Birth: 10/08/1972
Encounter Date: 10/06/2020 09:23

Sex: M
Provider: Block, Jordan [JB20] PA

Off #: 0305404
Facility: STF
Unit: H

**ROS:**

No: Shortness of Breath

**OBJECTIVE:**

**Temperature:**

| Date | Time | | Fahrenheit | Celsius | Location | Provider |
|------|------|--|------------|---------|----------|----------|
| 10/06/2020 | 11:54 STF | | 97.7 | 36.5 | | Block, Jordan [JB20] PA |

**Pulse:**

| Date | Time | Rate Per Minute | Location | | Rhythm | Provider |
|------|------|-----------------|----------|--|--------|----------|
| 10/06/2020 | 11:54 STF | 88 | | | | Block, Jordan [JB20] PA |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|------|------|-----------------|----------|
| 10/06/2020 | 11:54 STF | 16 | Block, Jordan [JB20] PA |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|------|------|-------|----------|----------|-----------|----------|
| 10/06/2020 | 11:54 STF | 145/93 | | | | Block, Jordan [JB20] PA |

**SpO2:**

| Date | Time | Value(%) | Air | | Provider |
|------|------|----------|-----|--|----------|
| 10/06/2020 | 11:54 STF | 97 | | | Block, Jordan [JB20] PA |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|------|------|-----|-----|---------------|----------|
| 10/06/2020 | 11:54 STF | 210.0 | 95.3 | | Block, Jordan [JB20] PA |

**Exam:**

**Cardiovascular**
**Arterial Pulse**
Yes: Normal

**Auscultation**
Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2

**Observation**
Yes: Normal Rate, Regular Rhythm

**General**
**Affect**
Yes: Pleasant, Cooperative

**Appearance**
Yes: Appears Well

**Mouth**
**Pharynx**

Mucous/Post nasal drainage noted at uvula.

**Musculoskeletal**
**Ankle/Foot/Toes**
Yes: Tenderness
No: Normal Exam, Normal Active ROM, Normal Passive ROM, Warm to Touch
Tenderness at anteromedial aspect ankle. Club foot with overt deformity. Surgical scars L foot with protruding lateral malleolus.
Significantly decreased ROM with ankle dorsiflexion and plantar flexion (R > L).

**Neurologic**

Offender Name: Shelton, Sherwin Terrell
Date of Birth: 10/08/1972                          Sex:      M                                  Off #:      0305404
Encounter Date: 10/06/2020 09:23                   Provider: Block, Jordan [JB20] PA            Facility:   STF
                                                                                                Unit:       H

**Exam:**

### Coordination - Gait

Drop foot noted with ambulation.

**Nose**

**General**

Scab at left nasal septum. Dried blood noted.

**Peripheral Vascular**

**Arms**

Yes: Radial Pulse Normal

**General**

Yes: Normal

**Legs**

Yes: Posterior Tibialis Normal

**Pulmonary**

**Auscultation**

Yes: Clear to Auscultation

**Observation/Inspection**

Yes: Normal

**Skin**

**Color**

Yes: Normal

**General**

Very dry, cracking skin heel

**ASSESSMENT:**

Disorder of urinary system, unspecified, N39.9 - Current, Chronic, Not Improved/Same

Nasal congestion, R09.81 - Resolved, History/Resolved, Not Assessed

Chronic pain due to trauma, G89.21 - Current, Chronic, Not Improved/Same

Diarrhea, unspecified, R19.7 - Current, Temporary/Acute, Not Assessed

Disorder of central nervous system, unspecified, G96.9 - Current, Chronic, Not Improved/Same

Essential (primary) hypertension, I10 - Current, Chronic, Not Improved/Same

Hyperlipidemia, unspecified, E78.5 - Current, Chronic, At Treatment Goal

Risk Score Low - 6 to 12 Months, RS Low - Current, Temporary/Acute, Not Improved/Same - *Max Risk Score 3.18*

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date | Start Date | Quantity | Prescriber Order |
|-----|------------|------------|------------|----------|------------------|
|     | DULOXETINE HCL 30 MG CAPS | 10/06/2020 09:23 | 10/06/2020 | 60 | Take one tab  By Mouth each noon and bedtime x 105 day(s) Pill Line Only – SMD approved 01-20-20 through 01-20-21 |

Indication:  Disorder of central nervous system, unspecified

| Offender Name: Shelton, Sherwin Terrell | | | | Off #: | 0305404 |
| Date of Birth: 10/08/1972 | | Sex: | M | Facility: | STF |
| Encounter Date: 10/06/2020 09:23 | | Provider: | Block, Jordan [JB20] PA | Unit: | H |

**New Medication Orders:**

| Rx# | Medication | Order Date | Start Date | Quantity | Prescriber Order |
|---|---|---|---|---|---|
| | APAP 325MG TABS | 10/06/2020 09:23 | 10/06/2020 | 120 | Take two tabs By Mouth two times daily PRN x 365 day(s) – KITE for refills. |
| | Indication: Chronic pain due to trauma | | | | |
| | hydroCHLOROthiazide Oral Capsule 12.5 MG | 10/06/2020 09:23 | 10/06/2020 | 30 | Take one tab By Mouth daily x 365 day(s) |
| | Indication: Essential (primary) hypertension | | | | |
| | NAPROXEN 500 MG TABS | 10/06/2020 09:23 | 10/06/2020 | 60 | Take one tab By Mouth each morning and evening PRN x 365 day(s) – Take with food. KITE for refills. |
| | Indication: Chronic pain syndrome | | | | |
| | Simvastatin Oral Tablet 40 MG | 10/06/2020 09:23 | 10/06/2020 | 30 | Take one tab By Mouth at bedtime x 365 day(s) |
| | Indication: Hyperlipidemia, unspecified | | | | |
| | TAMSULOSIN HCL 0.4 MG CP24 | 10/06/2020 09:23 | 10/06/2020 | 30 | Take one tab By Mouth at bedtime x 365 day(s) |
| | Indication: Disorder of central nervous system, unspecified | | | | |

**Discontinued Medication Orders:**

| Rx# | Medication | Order Date | Start Date | Quantity | Prescriber Order |
|---|---|---|---|---|---|
| 5064912 4 | Ammonium Lactate External Lotion 12 % | 10/06/2020 09:23 | 10/06/2020 | | Apply to affected area Topically each morning and evening as needed |
| | Discontinue Type: Immediate | | | | |
| | Discontinue Reason: Order Changed | | | | |
| | Indication: | | | | |
| 5064946 2 | DULOXETINE HCL 60 MG CAPS | 10/06/2020 09:23 | 10/06/2020 | | one capsule By Mouth daily |
| | Discontinue Type: Immediate | | | | |
| | Discontinue Reason: Order Changed | | | | |
| | Indication: | | | | |
| 5062927 6 | APAP 325MG TABS | 10/06/2020 09:23 | 10/06/2020 | | TAKE 2 TABS BY MOUTH 2 TIMES A DAY AS NEEDED FOR LEFT FOOT PAIN. KITE FOR REFILL |
| | Discontinue Type: Immediate | | | | |
| | Discontinue Reason: Order Changed | | | | |
| | Indication: | | | | |
| 5062938 1 | hydroCHLOROthiazide Oral Capsule 12.5 MG | 10/06/2020 09:23 | 10/06/2020 | | TAKE 1 CAP BY MOUTH EVERY DAY |
| | Discontinue Type: Immediate | | | | |
| | Discontinue Reason: Order Renewed | | | | |
| | Indication: | | | | |

| Offender Name: Shelton, Sherwin Terrell | | | | Off #: | 0305404 |
| Date of Birth: 10/08/1972 | | Sex: | M | Facility: | STF |
| Encounter Date: 10/06/2020 09:23 | | Provider: | Block, Jordan [JB20] PA | Unit: | H |

**Discontinued Medication Orders:**

| Rx# | Medication | Order Date | Start Date | Quantity | Prescriber Order |
|-----|-----------|-----------|-----------|----------|------------------|
| 5062933 0 | NAPROXEN 500 MG TABS | 10/06/2020 09:23 | 10/06/2020 | | *TAKE ONE TABLET BY MOUTH TWICE A DAY AS NEEDED FOR LEFT FOOT RECONSTRUCTION SURGERY 03-13-18.TAKE WITH FOODS. KITE FOR* |
| | Discontinue Type: | *Immediate* | | | |
| | Discontinue Reason: | *Order Renewed* | | | |
| | Indication: | | | | |
| 5062862 7 | Simvastatin Oral Tablet 40 MG | 10/06/2020 09:23 | 10/06/2020 | | *TAKE 1 TAB BY MOUTH AT BEDTIME* |
| | Discontinue Type: | *Immediate* | | | |
| | Discontinue Reason: | *Order Renewed* | | | |
| | Indication: | | | | |
| 5062853 1 | TAMSULOSIN HCL 0.4 MG CP24 | 10/06/2020 09:23 | 10/06/2020 | | *TAKE 1 CAP BY MOUTH AT BEDTIME* |
| | Discontinue Type: | *Immediate* | | | |
| | Discontinue Reason: | *Order Renewed* | | | |
| | Indication: | | | | |

**New Laboratory Requests:**

| Details | Frequency | Due Date | Priority |
|---------|-----------|----------|----------|
| * Top 100 Labs-C-CBC/DIFF/PLT | One Time | 12/29/2020 00:00 | Routine |
| * Top 100 Labs-C-CMP  PROFILE | | | |
| Annual Screen-Annual Screen-LIPID PROFILE | | | |
| All Lab Tests-U-URINALYSIS | | | |
| All Lab Tests-U-URINE CULTURE | | | |
| All Lab Tests-H-HEPATITIS A AB, IGG/IGM | | | |

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|----------|----------------|--------------------|
| MP Chronic Care | 01/06/2021 00:00 | Medical Provider 2 |

Max Risk Score 3.18
HTN, HLP, Neurogenic Bladder w/ Frequent UTI's, Congenital Spina Bifida, Hx Club Foot Repair/Triple Arthrodesis...Last appt 10-06-20. SEE NOTE. Had Urology f/u, Neurosurg f/u, Ortho f/u, and Podiatry f/u since last appt? Next Urology appt 07-2021. Order Hep A series if needed.

**Disposition:**

Kite PRN

**Other:**

Patient was evaluated for HTN, HLP, Neurogenic Bladder with frequent UTI's, Congenital Spina Bifida, Hx Club Foot Repair/Triple Arthrodesis.
1.) HTN...Minimal elevation. No med changes needed at this time. HTN can be improved via conservative management without further med changes needed.
2.) HLP...LDL 91 based on 09-2020 labs. Tolerating medication well.
3.) Neurogenic Bladder w/ frequent UTI's...Stable. No overt infection noted at this time despite some mucous noted in catheter. Advised patient that if dysuria returns then we can proceed with UA/Culture.

# Exhibit 19

## Michigan Department of Corrections
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | Shelton, Sherwin Terrell | | | Off #: | 0305404 |
| Date of Birth: | 10/08/1972 | Sex: | M | Facility: | STF |
| Note Date: | 06/09/2020 15:44 | Provider: | Block, Jordan [JB20] PA | Unit: | E |

Chart Review/Update encounter performed at Non Patient Contact.
**Administrative Notes:**

ADMINISTRATIVE NOTE   1          Provider:   Block, Jordan [JB20] PA

CRV received...
"30 DAYS OR MORE SINCE 407 HAS BEEN APPROVED." Orthotics follow up remains medically necessary.


**Co-Pay Required:**         No          **Cosign Required:**  No

**Telephone/Verbal Order:**  No

**Standing Order:**          No

Completed by Block, Jordan [JB20] PA on 06/09/2020 15:45

# Exhibit 20

# MICHIGAN DEPARTMENT OF CORRECTIONS
## BUREAU OF HEALTH CARE SERVICES
ADMINISTRATIVE NOTE

**PATIENT:**           **SHELTON, SHERWIN**
**DATE OF BIRTH:**      **10/08/1972**
**ENCOUNTER DATE:**    **04/08/2014 11:09 AM**
**COMPLETED BY:**      **Dean E. Johnson, LPN**
**LOCATION:**           **JCF**

**Tracking Information**
Date of occurrence 04/08/2014

**Issue**
Recieved Inmates AFO attached to boot from dwhc orthotics dept and deliverred it to inmates housing unit. Inmate accepted AFO and will use it for a period of time to make sure fit is good.

NAME: SHELTON, SHERWIN T

NUMBER: 305404
D.O.B : 10/08/1972

# Exhibit 21

SHERWIN SHELTON 305404 STF Lock:D099BOTD  ID:1045150903  [P 1/1]

You have received a **jpay** letter, the fastest way to get mail

From : JPay Representative
To   : SHERWIN SHELTON, ID: 305404
Date : 1/14/2021 3:02:32 PM EST,    Letter ID: 1045150903
Location : STF
Housing : D099BOTD

01/14/2021

I followed up with health care per our conversation related to your brace.• Unfortunately that requires a specialty visit at DWH and they are still not operating those clinics due to the pandemic.• As soon as they begin seeing patients agains, Health Care will ensure you are scheduled.

Warden Christiansen

# Exhibit 22

# Michigan Department of Corrections
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | Shelton, Sherwin Terrell | | | Off #: | 0305404 |
| Date of Birth: | 10/08/1972 | Sex: | M | Facility: | STF |
| Note Date: | 05/27/2020 10:35 | Provider: | Block, Jordan [JB20] PA | Unit: | E |

Chart Review/Update encounter performed at Non Patient Contact.
**Administrative Notes:**

ADMINISTRATIVE NOTE  **1**       Provider:  Block, Jordan [JB20] PA

Patient currently using Ace wrap to assist with LBP until receives back brace. No further action needed at this time.

**Co-Pay Required:**       No       **Cosign Required:**  No

**Telephone/Verbal Order:**   No

**Standing Order:**       No

Completed by Block, Jordan [JB20] PA on 05/27/2020 10:39

# Exhibit 23

# Michigan Department of Corrections
## Clinical Encounter

| | |
|---|---|
| Offender Name: Shelton, Sherwin Terrell | Off #: 0305404 |
| Date of Birth: 10/08/1972 | Sex: M |
| Facility: STF | |
| Encounter Date: 05/19/2020 19:44 | Provider: Lewis, Kaelie [KL4] RN |
| Unit: E | |

Nursing Note encounter performed at Clinic.

**SUBJECTIVE:**

COMPLAINT 1     Provider: Lewis, Kaelie [KL4] RN

Chief Complaint: Pain

Subjective: Prisoner states, "I have pain, it is there, but it is not there, almost numb, but is not". Prisoner rates pain on left foot 8 out of 10 on pains scale.

**Pain Location:** Foot-Left

Pain Scale: Unavailable

Pain Qualities: Intermittent | Deep

History of Trauma:

Onset:

Duration:

Exacerbating Factors:

Relieving Factors:

Comments:

**Administrative Notes:**

ADMINISTRATIVE NOTE 1     Provider: Lewis, Kaelie [KL4] RN

Prisoner evaluated for kite, "I'm still feeling some discomfort and some pain, and without my brace for 4 1/2 months". Prisoner states, "The brace is DWH and I cant get fitted until all this is over".

**ROS:**

**History**

**Personal Medical**

Yes: Describe Symptoms, When did symptoms begin, What makes symptoms worse, What makes symptoms better

Prisoner states, "The gabapentin, elevating, lay in tray and naproxen helps it. Walking does not help it".

**Integumentary**

**Nails**

Yes: Normal

No: Nail Thickening

**Skin**

Yes: Normal

No: Burning, Sores That Won't Heal, Pruritus, Rashes

**Musculoskeletal**

**General**

Yes: Foot Pain

Prisoner states, "My pain is 8 out of 10 on a pain scale".

**OBJECTIVE:**

**Exam:**

**General**

**Appearance**

Yes: Alert and Oriented to Time, Place, and Person

| Offender Name: Shelton, Sherwin Terrell | | Off #: | 0305404 |
|---|---|---|---|
| Date of Birth: 10/08/1972 | Sex: M | Facility: | STF |
| Encounter Date: 05/19/2020 19:44 | Provider: Lewis, Kaelie [KL4] RN | Unit: | E |

## Exam:

**Musculoskeletal**
   **Ankle/Foot/Toes**
      Yes: Deformity
      No: Normal Exam, Rash/Lesions
      Deformity due to chronic conditions and past medical conditions
**Skin**
   **General**
      Yes: Skin Intact
      No: Thickened Nails, Erythema
   **Lesions**
      No: Blisters, Bunion, Corn, Warts

## ASSESSMENT:

Alteration in Comfort

Prisoner given ACE wrap for one week and to f/u with nursing.


## PLAN:

Schedule:

| **Activity** | **Date Scheduled** | **Scheduled Provider** |
|---|---|---|
| Nurse Clinical Encounter | 05/26/2020 00:00 | Nurse |
|    F/u with nursing Ace wrap | | |

**Disposition:**
   Education Provided
   Kite PRN

## Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 05/19/2020 | Counseling | Access to Care | Lewis, Kaelie | Verbalizes Understanding |

| **Co-Pay Required:** | No | **Cosign Required:** No |
|---|---|---|
| **Telephone/Verbal Order:** | No | |
| **Standing Order:** | No | |

Completed by Lewis, Kaelie [KL4] RN on 05/19/2020 20:35

# Exhibit 24

# Michigan Department of Corrections
# Clinical Encounter

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: Shelton, Sherwin Terrell | | | | Off #: | 0305404 |
| Date of Birth: 10/08/1972 | Sex: | M | | Facility: | STF |
| Encounter Date: 03/03/2020 16:19 | Provider: | Rohrs, Donna [DR3] PA | | Unit: | E |

Chronic Care encounter performed at Clinic.

## SUBJECTIVE:

### COMPLAINT 1    Provider: Rohrs, Donna [DR3] PA

**Chief Complaint:** CARDIOVASCULAR

**Subjective:** Pt with HTN and HLD. He is prescribed HCTZ, lisinopril, and Zocor. Pt reports med compliance and no med SE. No CP or SOB.

10/18/19 Lab: Chol 111, HDL 34, LDL 55
IPRO risk score 4.54

**Pain Location:**

**Pain Scale:**

**Pain Qualities:**

**History of Trauma:**

**Onset:**

**Duration:**

**Exacerbating**

**Relieving**

**Comments:**

### COMPLAINT 2    Provider: Rohrs, Donna [DR3] PA

**Chief Complaint:** Other Problem

**Subjective:** Pt with hx of spina bifida. He has neurogenic bladder.. Chronic back and leg pain. Per RN report pt has been missing doses of neurontin, cymbalata (for pain) and oxybutynin (for bladder). Pt says today that he feels the neurontin needs to be increased because his pain is not controlled. he doesn't see the point of taking the medication if it is not helping pain. Later in the appt the pt says the medication does help with the pain.

Other concerns:
Pt self caths. He has recurrent UTIs. He says he is seeing intermittent "pus" when he self caths.

Pt says he went to DWH for replacement of his LLE brace and shoes. He says DWH kept the brace and he was supposed to return but has not. He also says he needs another pair of shoes without the brace (states brace is attached to shoe).

Pain in L foot. Prior surgery. States he had an xray and he is concerned the hardware is moving. Says he declined to follow up with Orthopedic in the past but now agreeable to returning.

**Pain Location:**

**Pain Scale:**

**Pain Qualities:**

**History of Trauma:**

**Onset:**

**Duration:**

**Exacerbating**

**Relieving**

| Offender Name: Shelton, Sherwin Terrell | | Off #: 0305404 |
|---|---|---|
| Date of Birth: 10/08/1972 | Sex: M | Facility: STF |
| Encounter Date: 03/03/2020 16:19 | Provider: Rohrs, Donna [DR3] PA | Unit: E |

**Comments:**

**Seen for clinic(s):** Cardiovascular

**Added to clinic(s):** Cardiovascular

**ROS:**

**Cardiovascular**

**General**

Yes: Normal

**Musculoskeletal**

**General**

pain in b/l feet, lack and low back

**Pulmonary**

**Respiratory System**

No: Shortness of Breath

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 03/03/2020 | 12:58 STF | 97.7 | 36.5 | | Grossett, Tracy [TG4] RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 03/03/2020 | 12:58 STF | 72 | | | Grossett, Tracy [TG4] RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 03/03/2020 | 12:58 STF | 16 | Grossett, Tracy [TG4] RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 03/03/2020 | 12:58 STF | 122/70 | | | | Grossett, Tracy [TG4] RN |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 03/03/2020 | 12:58 STF | 195.0 | 88.5 | | Grossett, Tracy [TG4] RN |

**Exam:**

**Cardiovascular**

**Arterial Pulse**

No: Normal

normal dorsalis pedis pulses, unable to palpate posterior tibial pulses

**Auscultation**

Yes: Regular Rate and Rhythm (RRR)

**Observation**

Yes: Normal Rate, Regular Rhythm

**Vascular**

no LE edema

**General**

**Appearance**

Yes: Appears Well

**Musculoskeletal**

| Offender Name: Shelton, Sherwin Terrell | | Off #: | 0305404 |
| Date of Birth: 10/08/1972 | | Facility: | STF |
| Encounter Date: 03/03/2020 16:19 | Sex: M<br>Provider: Rohrs, Donna [DR3] PA | Unit: | E |

## Exam:

### Ambulation

ambulates with cane

### Ankle/Foot/Toes

club feet b/l, surgical scars L foot, decreased ROM with ankle dorsi and plantar flexion (R > L)
L foot/ankle: prominent lateral malleolus, possible palpable hardware lateral mid foot

### Gait

antalgic gait

### Peripheral Vascular

#### General

Yes: Normal

### Pulmonary

#### Auscultation

Yes: Clear to Auscultation

#### Observation/Inspection

Yes: Normal

### Skin

#### Color

Yes: Normal

## ASSESSMENT:

Chronic pain syndrome, G89.4 - Current, Chronic, Not Improved/Same

Disorder of central nervous system, unspecified, G96.9 - Current, Chronic, Not Improved/Same

Essential (primary) hypertension, I10 - Current, Chronic, At Treatment Goal

Hyperlipidemia, unspecified, E78.5 - Current, Chronic, At Treatment Goal

## PLAN:

### Discontinued Medication Orders:

| Rx# | Medication | Order Date | Start Date | Quantity | Prescriber Order |
|---|---|---|---|---|---|
| 4310836 9 | OXYBUTYNIN CHLORIDE 5MG TAB | 03/03/2020 16:19 | 03/04/2020 | | TAKE 1 TAB BY MOUTH THREE TIMES DAILY - RML CRUSH AND DISSOLVE ACMO APPROVED THROUGH 7/24/20 |

| | | |
|---|---|---|
| **Discontinue Type:** | *Immediate* | |
| **Discontinue Reason:** | *Duplicate Therapy* | |
| **Indication:** | | |

### New Laboratory Requests:

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| All Lab Tests-U-URINALYSIS<br>All Lab Tests-U-URINE CULTURE | One Time | 03/10/2020 00:00 | Routine |

### New Radiology Request Orders:

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| General Radiology-Lower Extremeties-Foot [Left] | One Time | | 03/16/2020 | Routine |
| **Authorization Number:** | | | | |

| Offender Name: Shelton, Sherwin Terrell | | Off #: | 0305404 |
| Date of Birth:    10/08/1972 | Sex:      M | Facility: | STF |
| Encounter Date: 03/03/2020 16:19 | Provider:  Rohrs, Donna [DR3] PA | Unit: | E |

**Specific reason(s) for request (Complaints and findings):**

· check hardware placement compare to 9/16/19 xray

**Schedule:**

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Chart Review | 03/18/2020 00:00 | Medical Provider |

Review L foot xray, consider ortho referral if appropriate, see 3/4/20

MP Chronic Care                          06/04/2020 00:00   Medical Provider

HTN, HLD, Neurogenic bladder frequent UTIs, Congenital spina bifida, hx club foot repair, s/p L triple arthodesis and L achilles tendon lengthening (4/4/19), rv labs from April, see 3/4/20

**Disposition:**

Education Provided

**Other:**

1) discussed prior labs with pt
2) discussed the following
a) will check on follow up appt with orthotics - On CRV appears 2 consults were approved to return to Orthotics. Discussed with Offsite Coordinator who reviewed. Appt has not been scheduled yet. Offsite Coordinator will contact Scheduler to schedule return appt. Pt notified by kite response.
b) will review xray L foot and Orthopedics prior recommendations - On CRV of L foot xray of 9.16.19 the dictation states (in the findings section), "The first cuneiform fused to the tarsal navicular screw has fractured without displacement." Unclear if the screw is now displaced due to findings of possible hardware on palpation L foot. Ordered another xray to check hardware placement. Ortho dictation from 4/4/19 in paper chart reviewed. Await xray result and consider referral back to Ortho based on result. Pt notified by kite response
c) will review prior PMC recs to see if neurontin may be titrated up. 7/23/19 Addendum in NG may titrate up neurontin to 600 mg tid if needed, printed up rec and placed in paper chart. Requested neurontin 400 mg tid. Pt notified by kite response
3) encouraged medication compliance. ROR with risks reviewed for medication non compliance. MP, pt and RN (as a witness ) signed ROR
4) ordered UA and culture to see if UTI present
5) Although IPRO risk score 4.54, CCC 3 months due to high risk UTI, labs already ordered for 4/7/20
6) discontinued duplicate oxybutynin order, continue bladder flushes per Urology rec.

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 03/04/2020 | Counseling | Plan of Care | Rohrs, Donna | Verbalizes Understanding |

| Co-Pay Required: | No | Cosign Required:  No |
|---|---|---|
| Telephone/Verbal Order: | No | |
| Standing Order: | No | |

Completed by Rohrs, Donna [DR3] PA on 03/04/2020 15:47

# Exhibit 25

# Michigan Department of Corrections
## Kite Response

| | |
|---|---|
| **Offender #:** 0305404 | **Offender Name:** Shelton, Sherwin Terrell |
| **Location:** STF - CENTRAL MICHIGAN CORRECTIONAL | **Lock:** E:023:Bot:E |

| | |
|---|---|
| **Discipline:** | Medical |
| **Received Date:** | 07/21/2020 |
| **Initiated Date:** | 07/21/2020 |
| **Taken By:** | Ochoa, Steven [SO] RN |
| **Request Type:** | Medical Question |
| **Request Summary:** | Ms. Oats, turns her nose up at me when I ask her about my brace and what she have done or doing to help get my brace to me. She have a bad attitude. Ms. Bitler evertything with her is no, she know I've been walking around with out the brace and I been in pain, to the point they had to up the dose to my meds to try and help with the pain and swelling I've ask her to lok at his from my view I've asked for lay in trays because of the swelling and pain. Some days I can't even stand because of the pain. They won't even contact the company who have my brace and have them send it to this facility that's too hard for them. |
| **Plan/Action:** | Mr. Shelton, it is clearly documented that you have issues, nobody is doubting the difficulties that you may be having. Unfortunately, all clinics at Duane Waters, including Orthotics, are closed due to COVID. The Orthotics clinic is unable to send us your equipment because it is something that they need to fit in person. We will get you there as soon as possible. |
| **Comments:** | Part 2 of kite. |

# Michigan Department of Corrections
## Kite Response

**Offender #:** 0305404     **Offender Name:** Shelton, Sherwin Terrell

**Location:** STF - CENTRAL MICHIGAN CORRECTIONAL     **Lock:** E:023:Bot:E

| | |
|---|---|
| **Discipline:** | Medical |
| **Received Date:** | 07/21/2020 |
| **Initiated Date:** | 07/21/2020 |
| **Taken By:** | Ochoa, Steven [SO] RN |
| **Request Type:** | Medical Question |

**Request Summary:**     (continued)
So now I'm back rolling to the side as I walk, I just had reconstruction surgery to the same foot that the is worn, I got 9 screws a plate in that foot and x-rays show that a screw is broke in my foot, but this don't mean nothing to this H/C bosses. So maybe you can at least look a person in his eye and tell me that is no problem with my foot without the brace and that I'm fine even with the broken screw in my foot.

**Plan/Action:**     Mr. Shelton, it is clearly documented that you have issues, nobody is doubting the difficulties that you may be having. Unfortunately, all clinics at Duane Waters, including Orthotics, are closed due to COVID. The Orthotics clinic is unable to send us your equipment because it is something that they need to fit in person. We will get you there as soon as possible.

**Comments:**     Page 3, final page.

# Exhibit 26

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____   Grievance Identifier: | | | | | | | | | | | | |

| Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library. |

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| | | | | | |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _____
If none, explain why. _____

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

_____
_____
_____
_____
_____
_____
_____
_____

_____
Grievant's Signature

**RESPONSE** (Grievant Interviewed?  ☐ Yes  ☒ No   If No, give explanation. If resolved, explain resolution.)

| _____ | _____ | _____ | _____ |
| Respondent's Signature | Date | Reviewer's Signature | Date |
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | _____ | _____ |
| | | Grievant's Signature | Date |

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

**MICHIGAN DEPARTMENT OF CORRECTIONS**

CSJ-247S 3/18/2019

## STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM
(Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S")

| Prisoner Last Name: | Prisoner #: | Lock/Location: | Grievance #: |
|---|---|---|---|
| Shelton | 305404 | E-23/STF | STF-20-03-0239-12Z |

| Prisoner Interviewed: | YES ☐ | NO ☒ | If "NO" Reason: | Prisoner description allowed response from record. |
|---|---|---|---|---|
| Extension Granted: | YES ☐ | NO ☐ | If "YES", Enter End Date: | Click or tap to enter a date. |

**COMPLAINT SUMMARY:**

The grievant reports Nurse Supervisor was negligent to his report of not receiving his foot brace in a timely manner.

**INVESTIGATION SUMMARY:**

Healthcare received notification on February 6th, 2020 that the grievant had been approved for a return visit to Duane Waters regarding his brace. This appointment was awaiting scheduling from Duane Waters Orthotics department when notice came that routine offsite appointments were delayed to due the COVID-19 crisis. Repeat foot x-rays were done and reviewed by the onsite medical provder in March. As soon as it is safe, we will resume normal operations and the grievant will be scheduled for his offsite appointment to pick up the brace.

**APPLICABLE POLICY/PROCEDURE/ETC:**

Health Services 03.04.100

**DECISION SUMMARY:**

Greivance denied.

| RESPONDENT NAME: | M. Sosinski | TITLE: | RN 12 |
|---|---|---|---|
| RESPONDENT SIGNATURE: | | DATE: | 4/15/2020 |
| REVIEWER NAME: | R. Scabbo | TITLE: | Unit Chief |
| REVIEWER SIGNATURE: | | DATE: | 4/15/2020 |

Distribution: Original - Step I Grievance Coordinator     Copies – 3 To Grievant (1 Prisoner Copy; 1 for Step II filing; 1 for Step III filing)

**Michigan Department of Corrections**                              **STF-2020-03-239-12Z**

**Grievance Step II Response**                                      **SHELTON  305404**

**NOTE:** *An extension was requested and approved for this response to appeal.*

Grievant claims that STF Health Care failed to ensure timely provision of his (repaired)
AFO brace. Grievant reports that he dropped the brace off at DWH Orthotics in January
for repair and was advised that he should return in one to two weeks to pick up the
repaired brace. Grievant claims that STF Health Care failed to ensure that this follow-up
appointment occurred in a timely manner.

Review of the electronic medical record reveals that grievant was seen at the DWH
Orthotics clinic on 1/14/2020 for repair of his AFO brace and transfer of the brace to new
boots. HE was issued "Surefit" boots to wear in the interim. The orthotist requested that
STF Health Care submit a request for approval for grievant to return to DWH the
following week to be fitted with these items. This request was reviewed by the medical
provider on 1/22/2020 when the provider submitted a request for approval of the follow-
up visit. The request was approved on 1/27/2020. A similar request was approved on
2/5/2020. Grievant has not returned to DWH Orthotics to date. It is noted that he has
been issued an ACE wrap pending that appointment.

It is acknowledged that earlier return to DWH Orthotics would have been preferred
following the 1/14/2020 appointment. As outlined in the Step I response, the State of
Emergency currently in effect re: the COVID-19 pandemic has resulted in a temporary
suspension of off-site visits for nonurgent issues. This respondent contacted STF Health
Care and was assured that grievant will be returned to DWH Orthotics as soon as routine
off-site visits resume and the necessary appointment can be scheduled. Grievant is
encouraged to promptly notify Health Care should any adverse symptoms persist or
worsen in the interim.

Grievance partially resolved.


Patricia Lamb, RN, BSN                *Patricia Lamb, RN, BSN*          June 18, 2020
Respondent Name                       Respondent Signature              Date

MICHIGAN DEPARTMENT OF CORRECTIONS
PRISONER/PAROLEE GRIEVANCE APPEAL FORM

RECEIVED
MAY 0 4 2020
CENTRAL MICHIGAN
CORRECTIONAL FACILITY

4835-4248  5/09
CSJ-247B

Date Received by Grievance Coordinator
at Step II:   CENTRAL MICHIGAN
CORRECTIONAL FACILITY

Grievance Identifier: | | | | | | | | | |

CENTRAL MICHIGAN
CORRECTIONAL FACILITY

STF-2020-03-0239-12z

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: _____
_STEP II G/C_ by _5-4-2020_. If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Sherwin Shelton | 305404 | STF | E-23 | 3-19 | 4-27-20 |

**STEP II — Reason for Appeal** I dropped My brace off to DwH in the first week of Jan The Orthotics department, they needed back in a week or two. This t/c didn't Even Know that they had to Send me back to DwH I complained to t/c Mance time in Jan, feb, Mar; but Nothing. I told them i was in Pain walking without My brace, They fought Me All the way. They wouldn't Even E-mail DwH to have Shipped to this facility. i Saw the PA Rohrs And her About this, on March 4 the PA Sent me Paperwork Stateing that i have A Approved visit back to DwH But what happen with All the time before that Paperwork. Still Nothing

**STEP II — Response**

Date Received by
Step II Respondent:
MAY 0 8 2020

See attached Response

Patricia Lamb                    Patricia Lamb (signature) working for Response

Respondent's Name (Print)     Respondent's Signature     Date

Date Returned to
Grievant:

**STEP III — Reason for Appeal**

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III** — Director's Response is attached as a separate sheet.

DISTRIBUTION: White – Process to Step III;  Green, Canary, Pink – Process to Step II;  Goldenrod – Grievant

RECEIVED

DEPARTMENT OF CORRECTIONS
P  R/PAROLEE GRIEVANCE APPEAL FORM

4835-4248 5/09
CSJ-247B

MAY 0 4 2020

Date received by Grievance Coordinator at Step II: CENTRAL MICHIGAN CORRECTIONAL FACILITY

Grievance Identifier: STF-20-03-0239-122

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

JUL 01 2020

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: _____
STEP II GII by 5-4-2020. If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Sherwin Shelton | 305404 | STF | E-23 | 3-19 | 4-27-20 |

**STEP II — Reason for Appeal** I droped My brace off to DWH in the first week of Jan. Le Orthotics department, they needed back in a week or two. This t/c didn't Even know that they had to Send me back to DWH I complained to t/c Many time in Jan, Feb, Mar. but nothing. I told them i was in Pain walking without My brace They fought Me All the way. They wouldn't Even E-mail DWH to have shipped to this facility. i saw the PA Rohrs And her About this, on March 9 the PA Sent me Paperwork Stateing that i have A Approved visit back to DWH But what happen with All the time before that Paperwork. Still Nothings

**STEP II — Response**

Date Received by Step II Respondent: MAY 08 2020

See attached Response

Patricia Lamb
Respondent's Name (Print)

Patricia Lamb
Respondent's Signature

Per Response
Date

Date Returned to Grievant: 06/18/2020

**STEP III — Reason for Appeal** This t/c did fail in getting me back to DWH, Still to this date 6-26-20 I don't have my medical Equipment, I'm in Pain so Much they had to up my dose to my medication, they gave me A Ace wrap As if that is A Afo Brace. This t/c did Not Even to try to E-mail DWH. Now they Are blameing this virus As the reason why But they had from Jan, Feb, March and they Are doing off site Appointments but only do they feel need it, As it My well being is not important. So I suffer with Pain instead

**NOTE: Only a copy of this appeal and the response will be returned to you.**

**STEP III — Director's Response is attached as a separate sheet.**

DISTRIBUTION: White – Process to Step III; Green, Canary, Pink – Process to Step II; Goldenrod – Grievant

## Step III Grievance Response

**SHERWIN SHELTON**          305404

**STF**     20030239

Grievant alleges the Nurse inappropriately denied him access to requested brace.

In accordance with PD 03.02.130, this grievance is rejected as failed to attempt to resolve issue with staff. Per the Electronic Medical Record, a written attempt to resolve this issue through a Health Care Request (CHJ-549)/Prisoner Kite for medical services was not found in the EMR.

The grievance tracking number has been changed from STF-20-03-0239-12Z to STF-20-03-0239-28i in order to reflect the grievance category code at Step III.

Grievance rejected.

Response of Bureau of Health Care Services          Date:     7/21/2020

Approved: _____Smoyer RN_____          Date:     7/23/2020
                            S. Smoyer, RN

_____                              MAILED AUG -.8 2020
Richard D. Russell Manager, Grievance Section Office of Legal Affairs          Date Mailed

Ref. #          30702

C:          Warden   STF

          Regional Health Care Administrator          Northern
          Grievant