UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sherwin T. Shelton,

    Plaintiff,

v.

Magen Oaks et al.,

    Defendants.

_____/

Case No. 21-11614
District Judge George Caram Steeh
Magistrate Judge Jonathan J.C. Grey

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Sherwin T. Shelton is an incarcerated person in custody of the Michigan Department of Corrections challenging the conditions of his confinement at Central Michigan Correctional Facility ("STF"). (ECF No. 1.) He brings a complaint under 42 U.S.C. § 1983 against Magen Oaks, Michael Desco, Kaelie Lewis, Jordon Block, Carlynn Vanhall, Donna Rohrs, John Christiansen, and M. Sisinski. *Id.* This matter is before the Court on the defendants' motions for summary judgment on the basis of exhaustion. (ECF Nos. 15, 25, 30.)

On September 27, 2021, District Judge George Caram Steeh referred pretrial matters to the undersigned. (ECF No. 18.) For the following reasons, the

undersigned **RECOMMENDS** that the defendants' motions for summary judgment be **DENIED**.

I. Background

A. Shelton's Complaint

Shelton sets forth the allegations recited here. He was born with spina bifida[1] and requires ankle foot orthoses leg braces ("AFO braces") to prevent pain and swelling in his legs and to assist in mobility. (ECF No. 1, PAGEID.6.) Shelton has used AFO braces for more than a decade on both legs. *Id.* Since STF lacks the equipment and expertise to provide Shelton with AFO braces, Shelton has been treated offsite at Duane L. Waters Health Care Orthotics for over a decade. (*Id.* at PAGEID.7.)

Since Shelton's braces must be attached to his shoes, brace replacements require replacements of both braces at the same time to ensure he walks evenly. *Id.* Historically, it took about three weeks each time for Shelton to receive brace replacements. Cite. At times, he received a new or repaired AFO brace without leaving prison. (*Id.* at PAGEID.7, 13.) When Shelton does not have AFO braces and boots, he experiences pain and swelling in his right foot and ankle and increased lower back pain. *Id.* Shelton also has nine screws in his left foot from

---

[1] Spina bifida is a condition that affects the spine in which there is damage to the spinal cord and nerves. *Spina Bifida*, Centers for Disease Control and Prevention, https://www.cdc.gov/ncbddd/spinabifida/facts.html (last visited July 28, 2022).

reconstruction in surgery. (*Id.* at PAGEID.8.) One of the screws is broken and causes additional pain when he does not have his AFO brace. (*Id.* at PAGEID.8.)

On January 14, 2020, Shelton was taken to Duane L. Waters Health Care Orthotics to repair his left AFO brace and transfer the brace to new boots. *Id.* His orthotist requested that he return the next week to be fitted. *Id.* On January 27, 2020, STF staff approved the orthotist's appointment request. *Id.* On February 4, 2020, Shelton sent an urgent kite,[2] asking why he had not been taken to his AFO brace appointment. *Id.*

On February 5, 2020, Lewis, a registered nurse, responded to Shelton's kite: "You are scheduled with HC. Look for your call out." *Id.* No one took Shelton offsite for the AFO brace fitting. On May 26, 2020, MDOC staff provided him with an Ace wrap for his left foot; some time after, they provided him "Surefit" boots to wear. *Id.* In 2020 and 2021, MDOC staff took him to other medical appointments for medical resonance imaging, urology, orthopedics, and neurosurgery. *Id.*

The entire time Shelton did not have his AFO braces, he repeatedly informed STF staff about his pain orally or through kites, including Oaks, Chistiansen,

---

[2] A "kite" is an internal mailing that prisoners can send to prison officials, generally used to express complaints. McCracken v. Haas, 324 F. Supp. 3d 939, 943 n.1 (E.D. Mich. 2018).

3

Lewis, Rohrs, Desco, and Sosinski. (*Id.* at PAGEID.13.) On June 7, 2021, Shelton received his AFO braces. (ECF No. 25, PAGEID.298.)

### B. Procedural History

According to MDOC records, Shelton pursued one grievance arising out of STF through Step III of the MDOC grievance process: Grievance No. STF-20-03-0239-28i ("Grievance 0239"). (ECF No. 15-3, PAGEID.210.)

All defendants moved for summary judgment based on Shelton's failure to exhaust administrative remedies. (ECF Nos. 15, 25, 30.) Shelton responded (ECF Nos. 19, 31, 32), and all defendants replied (ECF Nos. 24, 33, 36).

### C. MDOC Grievance Process

MDOC provides a three-step grievance process that prisoners must follow to exhaust administrative remedies. MDOC Policy Directive 03.02.130 (effective Mar. 18, 2019). Per MDOC policy, grievants must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id.* ¶ S. Prior to Step I, a grievant must "attempt to resolve the issue with the staff member involved within two business days." *Id.* ¶ Q. If there is no resolution, the grievant may file a Step I grievance within five business days. *Id.* At Step II, a grievant may appeal the denial of a Step I grievance within ten business days after receipt of the Step I response. *Id.* ¶ DD. At Step III, a grievant may appeal the Step II denial

4

within ten business days after receipt of the Step II response. *Id.* ¶ HH. Grievances at all steps are logged in a computerized tracking system. *Id.* ¶¶ X, EE, II.

## II. Standard of Review

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), courts must grant motions for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, a fact is material "only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52 (citing *Anderson*, 477 U.S. at 248).

In reviewing a summary judgment motion, the Court must draw all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The burden of demonstrating the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears this responsibility by identifying portions of the record that show the absence of a genuine issue as to any material fact. *Id.* If

the moving party meets its burden, the burden then shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial." *Id.* at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," the moving party is then entitled to summary judgment. *Id.* at 322.

### B. Exhaustion

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing an action about prison conditions. 42 U.S.C. § 1997e(a). The Supreme Court requires that a grievant exhaust all administrative remedies before filing a lawsuit. *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). It is also "the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. Proper exhaustion entails "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (citation omitted).

Failure to exhaust is an affirmative defense, so prisoners are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. The burden thus rests on defendants to establish failure to exhaust. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). To carry their burden,

6

defendants must show that no reasonable jury could find that the plaintiff exhausted their claims. *Surles v. Andison*, 678 F.3d 453, 455 (6th Cir. 2012). Once the defense of failure to exhaust is raised, the grievant must "present 'significant probative evidence' to defeat the motion for summary judgment." *Id.*

Here, Shelton was required to undertake all steps of the MDOC process to fully exhaust his grievances. The defendants, who bear the burden of proof, provided Shelton's Step III grievance report, which lists every grievance Shelton pursued through Step III. (ECF No. 15-3.) According to the report, Shelton pursued one grievance arising out of STF through Step III: Grievance 0239. *Id.*

### III.  Analysis

The MDOC grievance process requires a grievant to include the names of all those involved in the issue they are grieving. MDOC Policy Directive 03.02.130 (effective Mar. 18, 2019) ¶ S. Failure to do so at Step I generally constitutes a failure to properly exhaust administrative remedies. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *see also Burley v. Michigan Dep't of Corr.*, No. 16-CV-10712, 2016 WL 11259277, at *7 (E.D. Mich. Nov. 30, 2016), report and recommendation adopted, No. 16-CV-10712, 2017 WL 877219 (E.D. Mich. Mar. 6, 2017) ("By naming [the defendant] at only step II of the grievance process, and failing to name [the defendant] at step I, [the plaintiff] has failed to properly exhaust this claim against [the defendant.]").

7

The Sixth Circuit recognizes an exception to this general rule. If MDOC grievance screeners overlook or forgive a procedural defect and address a grievance on the merits, they "cannot be heard to complain about that defect in later litigation." *Johannes v. Washington*, 2016 WL 1253266 at *10 (E.D. Mich. 2016) (citation omitted); *see also Reed-Bey*, 603 F.3d at 323 ("Because the Michigan Department of Corrections opted to dismiss his grievance on the merits rather than invoke its procedural bar, [the plaintiff] exhausted his claim.").

On March 24, 2020, Shelton filed Grievance 0239, which asserted that "Nurse Supervisor," or "Supervisor Oa[k]s," failed to provide him with his brace, despite his attempts to communicate with "H/C" (presumably "healthcare"), "PC," and the warden. (ECF No. 15-3, PAGEID. 214.) At Step I, MDOC denied Grievance 0239, explaining that "healthcare" had been notified that Shelton could return to Duane Waters for his braces but that COVID-19 made it unsafe to schedule Shelton for his offsite appointment. (*Id.* at PAGEID.173.)

At Step II, Shelton named "healthcare" again and identified Rohrs. (*Id.* at PAGEID.212.) MDOC denied Shelton's Step II appeal, explained that MDOC has suspended nonurgent offsite visits due to COVID-19 and encouraged Shelton to "promptly notify Health Care" if adverse symptoms persist. (*Id.* at PAGEID.213.) At Step III, MDOC upheld this decision, explaining that Shelton failed to resolve the issue with staff in accordance MDOC Directive 03.02.130. (*Id.* at

8

PAGEID.211.) MDOC stated that Shelton did not resolve the issue through a kite or healthcare request. *Id.*

### A. Claim Against Oaks

Shelton exhausted his remedies against Oaks. First, MDOC's Step III decision improperly denied Shelton's appeal. The Step III decision erroneously claimed that Shelton's grievance failed because he did not send healthcare requests or kites about his issue. (*Id.* at PAGEID.211.) However, Shelton alleges that he sent numerous kites about his issue and raised verbal complaints, and the record demonstrates that MDOC even responded to one kite. (*Id.* at PAGEID.259.)

More importantly, MDOC Policy Directive 03.02.130(Q) does not require grievants to send healthcare requests or kites; it merely requires an "attempt to resolve the issue with the staff member involved." Shelton obeyed this policy by sending kites and speaking to "PC," Oaks, and the warden. (*Id.* at PAGEID.214.) Additionally, in his reply brief, Oaks concedes that there is an issue of fact as to whether Grievance 0239 exhausted Shelton's administrative remedies as to them. (ECF No. 24, PAGEID.284.)

Oaks argues that to the extent Shelton exhausted his claims, Shelton only did so for claims that arose before March 27, 2020, or the date which Shelton filed his Step I grievance. (ECF No. 30, PAGEID.339.) Shelton contends that it would be nonsensical to find that Shelton only exhausted issues prior to March 27, 2020

9

because that would indicate he needed to file a new grievance for each day his grievance went unresolved. (ECF No. 35, PAGEID.469.) The Court rejects Oaks' argument.

First, MDOC rejects duplicative grievances, so Shelton would have been barred from filing new grievances. MDOC Policy Directive 03.02.130(J)(2) (effective Mar. 18, 2019). Oaks' suggestion that Shelton could have filed grievances against different individuals ignores the fact that (1) MDOC already had notice that Shelton attempted to grieve against Oaks, "H/C," "PC," and the "warden," (ECF No. 15-3, PAGEID.214) and (2) plaintiffs may not necessarily have other individuals to grieve against after their prior grievances are rejected. Second, plaintiffs need not wait until their issue is remedied to file a grievance—their issue may never be remedied, or as in Shelton's case, it was not remedied for over a year. Accordingly, Shelton's grievance sufficiently placed MDOC on notice that he alleged a continuing violation of his rights. *See Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (discussing *Ellis v. Vadlamudi*, 568 F.Supp.2d 778 (E.D. Mich. 2008)) ("[B]ecause the condition was ongoing, the grievance was timely for all claims that could be filed regarding the condition.")

The Court finds that Shelton exhausted his remedies against Oaks.

10

## B. Claims Against Desco, Lewis, Block, Vanhall, Rohrs, Christiansen, and Sisinski

Desco, Lewis, Block, Vanhall, Rohrs, Christiansen, and Sisinski argue that to the extent that Grievance 0239 exhausted remedies against any defendant, it only did so against Oaks. (ECF No. 24, PAGEID.286; ECF No. 25, PAGEID.300; ECF No. 30, PAGEID.339.) They argue that Shelton failed to exhaust because he failed to file any grievances that named them. *Id.*

The Court finds that *Reed-Bey* precludes Desco, Lewis, Block, Vanhall, Rohrs, Christiansen, and Sisinski from asserting non-exhaustion on the basis that they were not named in Shelton's grievance. *See Reed-Bey*, 603 F.3d at 323. In his grievance, Shelton complained that Oaks, "H/C," "PC," and the "warden" did not resolve his issue with acquiring his AFO braces. (ECF No. 15-3, PAGEID.214.) His grievance made the failure to name all those involved apparent to the grievance screener. *Johannes*, 2016 WL 1253266, at *10 (holding that the prisoner's grievance, which stated that he attempted to resolve the issue with "health care" and "dental" and that those groups were somehow responsible for an MDOC-wide policy, put MDOC on notice and precluded a defendant's non-exhaustion argument).

Here, Shelton stated that he attempted to resolve the issue with Oaks, "H/C," "PC," and the "warden." (ECF No. 15-3, PAGEID.214.) This gave the grievance

screener fair notice that Oaks was likely not the only party at fault and that Shelton had not adequately "name[d] . . . all those involved in the issue being grieved." MDOC Policy Directive 03.02.130(S) (effective Mar. 18, 2019). But the grievance screener nevertheless addressed his grievance on the merits at every step, even referring to "healthcare" as the entity that Shelton grieved against in its responses. (ECF No. 15-3, PAGEID.213, 215.) A reasonable jury could thus think that the grievance had an apparent naming defect. Accordingly, the fact that the grievance screener overlooked the defect then precludes the defendants from complaining about it now. *See Reed-Bey*, 603 F.3d at 324–26.

    Since the grievance screener declined to enforce MDOC's procedural requirements and resolved Shelton's grievance on the merits, the Court finds that Desco, Lewis, Block, Vanhall, Rohrs, Christiansen, and Sisinski cannot raise a non-exhaustion defense.[3] *See Reed-Bey*, 603 F.3d at 323. Additionally, as with Oaks, the Court finds that this does not limit the facts to those arising before March 27, 2020.

---

[3] As the Court resolved these matters on the basis of exhaustion, the Court need not address the arguments regarding the grievability of Shelton's issues.

## IV. Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that the defendants' motion for summary judgment be **DENIED**.

Dated:  July 30, 2022          s/**Jonathan J.C. Grey**
                               Jonathan J.C. Grey
                               United States Magistrate Judge

**Notice to the Parties About Objections**

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 30, 2022.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager
